# Martin *v.* The State.

## *Keeping Gaming Table.*

(Decided May 3, 1911.  56 South. 64.)

1. *Gaming; Gaming Table.*—A table on which gambling games are played in a gambling place is a gaming table kept for gaming within the provisions of section 6985, Code 1907.

2. *Same; Offense; Statute.*—The offense denounced by section 6985, Code 1907, may be committed by one act or a series of acts, and to show the character of the table, it is competent to introduce evidence of a series or any number of games played thereon, and that the same was kept in a room frequented by gamblers, and in which gaming was done, whether the defendant was or was not present at all the games.

3. *Same; Evidence.*—Where the charge is for exhibiting or keeping a gaming table, the burden is on the state to show first that the table was used for gaming within the time covered by the indictment, and second, that the defendant kept or was interested in keeping it for gaming during that period, and to this end it is competent to show that the room and table in question were used for gaming in the absence of defendant.

4. *Same.*—Where there was evidence tending to show that the defendant kept a gaming table for gaming, or was interested in keeping the same for such purpose, it was competent to introduce evidence of gambling on the table whether the defendant was present or absent.

5. *Same.*—Where the prosecution was for keeping a gaming table and a witness testified that he told the defendant that a brother had lost money there, and the defendant replied that he was not present when his brother was there, but that if the brother had lost money, he would return it, it was competent to show that money was sent to the witness without showing who sent it, as tending to connect accused with the gaming table.

6. *Same; Elements of Offense.*—In a prosecution for keeping a gaming table, it is not necessary to show that defendant operated a table for hire or reward, but it is sufficient to show that the table kept by the accused was a gaming table kept for gaming purposes.

7. *Evidence; Several Crimes.*—Where several crimes constitute one criminal transaction, evidence of all such crimes may be given as part of the res gestae of the crime charged.

8. *Same; Reputation.*—Where the charge was for keeping a gaming table, and the undisputed evidence showed the place where the table was kept, but the proprietorship of the place was in dispute, it was not competent to introduce evidence of the reputation of the place, especially where the proprietorship thereof of the defendant was linked with the questions asked witnesses as to the reputation of the place.

[Martin v. The State.]

9. *Same; Admissions or Confessions; Preliminary Proof.*—It is the duty of the court before admitting confessions or admissions of the defendant, to satisfy itself by preliminary proof that such admissions were voluntarily made, as the general rule is that admissions or confessions by a defendant are prima facie involuntary, and inadmissible.

10. *Same; Proof of · Confession.*—In introducing a confession of the defendant the state is not required to prove the whole of it, and where the state shows a part, the defendant may bring out the remainder.

11. *Same; Offer to Compromise.*—Offers by a defendant to compromise or settle for the offense charged are not admissible.

12. *Charge of Court; Misleading.*—A charge asserting that if the jury have a reasonable doubt as to whether or not accused or someone else kept or was interested in keeping a gaming table, they must acquit the defendant, was properly refused as misleading since the defendant and someone else may have been the joint keepers of the table, or the defendant may have been interested in keeping the table, although someone else was the actual keeper.

13. *Same.*—A charge asserting that if the jury should not be willing to act on the evidence, if it was in relation to matters of most solemn importance to their own interest, they must find accused not guilty, was misleading and properly refused.

14. *Same.*—A charge asserting that the jury should not convict the accused without a reasonable belief in his guilt, and even such reasonable belief might not be sufficiently shown to exclude a reasonable doubt to the contrary, was properly refused as speculative and misleading.

15. *Same; Issues.*—Instructions must embody legal propositions applicable to the issues and the evidence and failing to do so are properly refused.

APPEAL from Montgomery City Court.

Heard before Hon. ARMSTEAD BROWN.

Reese Martin was convicted of keeping a gaming table, and he appeals. Reversed and remanded.

· The exceptions to evidence sufficiently appear in the ·opinion of the court. The following charges were refused to the defendant: "(2) The court charges the jury that if from all the evidence in the case you have a reasonable doubt as to whether or not Reese Martin, or some one else, kept, exhibited, or was interested or concerned in keeping or exhibiting a gaming table, then you must acquit the defendant. (3) The court charges the jury that if, from all the evidence in this case, you

[Martin v. The State.]

have a reasonable doubt as to whether Reese Martin conducted or was interested in the table testified to in this case, then you must acquit him. (4) If you should not be willing to act upon the evidence in this case, if it was in relation to matters of most solemn importance to your own interests, then you must find the defendant not guilty. (5) The jury should not convict the defendant without a reasonable belief of his guilt, and even such reasonable belief might not be sufficiently shown to exclude a reasonable doubt to the contrary.

L. A. Sanderson, and Hill, Hill & Whiting, for appellant. The court erred in permitting the questions as to the reputation of the place. *Wooster v. The State*, 55 Ala. 221; *Toney v. The State*, 60 Ala. 98; *Abel v. The State*, 90 Ala. 633; *Ramsey v. The State*, 138 Ala. 333. All this evidence was hearsay.—1 Mayf. 318; 6 Ib. 352. The court erred in allowing the admissions or confessions of the defendant without requiring it to be shown that it was voluntary.—*State v. Stallings*, 142 Ala. 112. The court erred in admitting evidence of the offer to compromise.—*Sanders v. The State*, 148 Ala. 603; *Wilson v. The State*, 73 Ala. 527; *Martin v. The State*, 62 Ala. 119. Counsel discuss other assignments of error relative to evidence, but without further citation of authority. Charge 4 should have been given.—*Pickens v. The State*, 115 Ala. 42. Charge 5 should have been given.—*Elmore v. The State*, 92 Ala. 51.

R. C. BRICKELL, Attorney General, for the State.

DE GRAFFENRIED, J.—The defendant was tried on an indictment, framed under section 6985 of the Code of 1907, charging him with "keeping, exhibiting, or being connected in keeping or exhibiting a gaming table for

12 CA

gaming," was convicted, and sentenced to the peniten-. tiary for six months.

The legal evidence in the case, as contained in the bill of exceptions, if believed, showed beyond a reasonable doubt that the room in which the table is alleged to have been kept was, at some time during the month of December before the finding of the indictment, a gambling place, and, as the use of the table about which the witnesses testified for gambling was inseparably connected with the place in which it was kept, we have no hestitancy in saying that the legal evidence in the case showed, beyond a reasonable doubt, if believed, that the table was a gambling table kept for gaming during that period. It seems from the state's witnesses and from the testimony of the defendant himself that the game was played with dice, that it was a gambling game, played on a table, and, while there is some conflict in the testimony as to whether the table was marked or figured, there was, under the undisputed evidence, a table there, kept by some one, for gambling purposes, and this rendered it a gaming table kept for gaming. Any table kept and used for gaming has been held by the Supreme Court to be a table for gaming within the meaning of the statute. The main inquiry for the court and jury has reference to the use for which the table was kept or exhibited, for it is the use that characterizes its criminality.—*Toney v. State,* 61 Ala. 1; *Wren v. State,* 70 Ala. 1; *Bibb v. State,* 83 Ala. 84, 3 South. 711; *Huttenstein's Case,* 37 Ala. 157; *Dixon's Case,* 76 Ala. 89; *Smith v. State,* 22 Ala. 54; 1 Mayfield's Dig. pp. 377, 378, § 182.

It follows, therefore, that the only true inquiry in this case, under the evidence presented by the bill of exceptions, before the jury on the trial in the court below, was whether or not the evidence showed, beyond a rea-

sonable doubt, that the defendant "kept, exhibited, or was concerned in keeping or exhibiting" the table during the period covered by the testimony.

The offense with which the defendant is charged is, under our statute, a felony. At common law, it was declared to be a nuisance and was indictable as such. The offense, under our statute, may be committed by one act, or by a series of acts constituting an offense continuous in its nature. It may therefore be proved by one act, or by a series of acts.

. "Where several crimes constitute, in fact, one criminal transaction, evidence of all of such crimes may be given as part of the res gestae of the offense with which the defendant is charged in the indictment."—*Allison v. State*, 1 C. of. App. 206, 55 South. 453. It was therefore competent in this case for the state, for the purpose of showing the character of the table, to offer evidence not simply as to one game, but as to a series or any number of games played on the table; that it was kept in a room frequented by gamblers and in which gambling was done; and that the table was used as an intrument in gambling or was gambled upon, whether the defendant was or was not present at all of such games.

There is wide diversity of opinion between modern text-book writers, and also the various courts of last resort in the states of the Union, as to whether proof of offenses which were indictable nuisances at common law can be aided by evidence of common repute.—2 Wigmore on Ev. § 1620; 1 Wigmore on Ev. § 202; Underhill on Crim. Ev. § 475. This diversity is probably due to the difference in the language of the indictments and statutes under consideration, and also to confusion as to the real issue, i. e., whether the fact in issue is *fame* or *reputation*, or *actual habit or character*.—2 Wigmore on Ev. § 1620.

In Alabama, except in some well-recognized exceptions to the rule, the law has been well settled, since the case of *Stanley & Elliott v. State,* 26 Ala. 26, that common repute is not legal evidence tending to establish the existence of a fact. Common repute, except in well-recognized exceptions to the geenral rule, is only receivable in evidence in this state as relevant on.the issue as to whether or not a particular person knew of the existence of a fact already in evidence. If the issue is whether a certain house is or is not a house of prostitution, for instance, then evidence that it is reputed so to be is inadmissible. If, on the other hand, the issue is whether a certain person knew that the house was a house of prostitution, then its common repute is admissible. In the case of *Toney v. State,* 60 Ala. 97, the Supreme Court, through Brickell, C. J., says: "The indictment contains three counts: The first count charging that the defendant did keep a certain house of ill fame, then and there resorted to for the purpose of.public prostitution and lewdness'; the second charging that 'she was a common prostitute, or the keeper of a house of prostitution, etc.'; and the third that 'she was a common prostitute, or the keeper of a house of prostitution.' * * * In no aspect of the case was it permissible to give evidence of the reputation of the house in which the defendant lived."

In the case of *Wooster v. State,* 55 Ala. 221, the Supreme Court says: "The accusation is of a specific offense, in its nature susceptible of proof by witnesses who speak from their knowledge. The rule is that hearsay evidence—and such is the evidence of reputation—is inadmissible to establish any specific act, capable of direct proof by witnesses who speak from their own knowledge; and when the rule is relaxed it is from necessity alone."

[Martin v. The State.]

The court therefore erred in admitting evidence of the reputation of the room in which the table was kept, and it committed reversible error in so doing, if for no other reason, because the defendant's ownership or proprietorship of the room was so linked with the reputation of the room by some of the questions asked by the solicitor as to form a part of it. One of the questions was as follows: "Do you know the general reputation of the place where Mr. Martin had his place of business" And, against the objection of the defendant, the witness was permitted to answer, "It is a gambling place." While the place where the table was kept was a gambling place, and the table referred to in the evidence a gaming table kept for gaming, if the undisputed evidence in the case is to be believed, the ownership or proprietorship of the room in which the table was kept was a matter about which the evidence was in dispute, and it therefore follows that injury to the defendant will be presumed by the admission by the court of the evidence referred to. Courts will never hold that the admission of irrelevant or illegal evidence before a jury is harmless unless the record shows affirmatively that no injury was done to the party against whom it was offered, and on the next trial of this case no evidence of the reputation of the room or table should be permitted.

The testimony of the witness W. D. Hales, except that part of it which related to the offer of compromise, was, subject to the hereinafter qualifications, relevant and competent. As the offense with which the defendant was charged can be proved by one act or by a series of acts so connected together as to form one continuous criminal transaction, the statement which Hales testified the defendant made to him may, in one sense, be regarded as part of the res gestae of the offense. This

statement, however, related to a game evidently played on some previous day or night, and not to a game in progress when the statement was made. While, from this statement, the jury were authorized to infer that the game then in progress was being played in a room under defendant's dominion and on a table kept or exhibited by defendant or in the keeping or exhibiting of which the defendant was interested, nevertheless it also related to a game at which the witness was not present, and therefore formed an admission, within the letter of the law, from which the guilt of the defendant might, by the jury, be inferred. Admissions from which the guilt of a defendant may be inferred are governed by the same rules as confessions. . In Alabama the confessions of a defendant are regarded as having been made involuntarily and are, prima facie, inadmissible. To be admissible, they must be made voluntarily. Whether they are made voluntarily is a question of fact, not for the jury, but for the court, and the court should, by an examination voir dire, pass upon their admissibility before admitting them. As the question as to their admissibility is for the court, when they are admitted in the lower court on controverted questions of fact, a court of review will not revise the rulings admitting them unless they appear to be manifestly wrong.— 1 Mayfield's Dig. p. 213, § 198. It is true that, in some cases where no preliminary proof as to the admissibility of confessions was required by the primary court, our Supreme Court has held the confessions admissible, but in all such cases the facts and circumstances under which the confessions were made affirmatively showed that there were no improper influences proceeding from the person to whom they were made, or from any other person or from the surrounding circumstances. In such cases the failure of the court to require the preliminary proof as to

[Martin v. The State.]

the admissibility of the confessions was held to have been affirmatively shown by the record to have been without injury.—*Washington v. State,* 106 Ala. 58, 17 South. 546.

In this case it is not necessary for us to intimate an opinion as to whether the admissions testified to by this witness are shown affirmatively to have been voluntarily made. It is sufficient for us to say that in all criminal cases primary courts should satisfy themselves, by preliminary proof, that confessions are admissible, before permitting them to go to the jury.—*State v. Stallings,* 142 Ala. 112, 38 South. 261; *Ammons v. State,* 80 Miss. 592, 32 South. 9, 18 L. R. A. (N. S.) 777, 92 Am. St. Rep. 607.

That portion of the testimony of W. D. Hales in which he stated that the defendant said "he wanted to know—he said he did not think that he ought to be punished for that—he wanted to know who my friends were, if we could not come to a compromise," was incompetent and should not have been allowed in evidence. Under the decisions of our Supreme Court, offers of compromise cannot be proven against the party making them. The rule is applicable to criminal as well as civil cases.—*Wilson v. State,* 73 Ala. 527; *Sanders v. State,* 148 Ala. 603, 41 South. 466.

When an admission in the nature of a confession, or when a confession, is made, it is not necessary for the state to prove the whole of the statement made by the defendant to the witness. If the state proves a part, the defendant may prove the remainder if he sees proper so to do.—*Webb v. State,* 100 Ala. 52, 14 South. 865; 1 Mayfield's Dig. pp. 203, 204, § 28. On the next trial of this case, if the admissions which the witness W. D. Hales claims the defendant made to him are offered and admitted in evidence by the court, it will be permissible

for the state to elicit from that witness all his testimony, as shown in the bill of exceptions, except that part above quoted relating to the compromise. The defendant, on cross-examination, can then introduce the testimony as to the compromise if he elects so to do.

There is nothing in the contention of the defendant that the court erred in admitting testimony tending to show that the room and table about which the witnesses testified were used for gaming in the absence of the defendant. Under indictments of this character, there are two distinct material inquiries for the jury. The first inquiry is: Was there a gaming table used for gaming within the period covered by the indictment? And, if that question is answered in the affirmative, then the second inquiry is: Did the defendant keep or exhibit, or was he interested in exhibiting or keeping, the table for gaming during that period? On the first inquiry, in fixing the character of the table, we refer to what we have had to say on that subject under section 2 of this opinion.

In addition to this, while we, for obvious reasons, refrain from expressing any opinion as to the weight or sufficiency of the evidence tending to show that the defendant kept or exhibited, or was interested in keeping or exhibiting, the table for gaming purposes, there is legal evidence, shown in the bill of exceptions, tending to show defendant's connection therewith during the entire period covered by the testimony, and for this reason, as well as for the reasons set out in section 2 of this opinion, it was permissible for the state to introduce evidence of gambling on the table, whether the defendant was present at all of such games or not.—*Allison v. State*, I Co. of App. 206, 55 South. 453; 1 Wigmore on Ev. § 202; *Toney v. State, supra.*

7. The fact that defendant paid rent for No. 32½ Dexter Avenue during the month of December, and the fact that a drink stand was conducted in the room in which the table is alleged to have been kept for gaming, were, taken in connection with the other relevant evidence introduced by the state, relevant, and the court committed no error in admitting evidence of those facts.

8. Henry Hales testified that in a conversation had with the defendant he told defendant "that my brother said that he had been there and lost some money," and Mr. Martin stated "that he was not present when he was there, that he had not seen him, but would ascertain if he had been there, and if he had been there he would return the money to me." The witness was then allowed to testify, against the objection of the deefndant, that the money *was* sent to him, but he did not know by whom. It is manifest that the court committed no error in permitting this testimony. The fact that the money was sent to the witness had a direct tendency to connect the defendant with the gaming table at which the money was lost, if it was lost at a gaming table.

9. There is nothing in the contention of defendant that the state failed in its evidence because of the absence of proof that the table was operated for hire or reward. The law will no more permit the keeper of a gaming table for gaming to escape its punishment because of a lack of evidence that his table was kept for hire, than it will excuse the commission of any other felony because it does not, in the particular case, possess evidence of the motive which actuated the crime. It is not because the gaming table is a table kept for hire that the law condemns it. It is because its exhibition for gaming purposes is detrimental to the good order and well-being of the public that the law condemns it. It is not because a common prostitute sells her favors

that the law declares her to be a nuisance. It is because her vocation is vicious and her mode of life is degrading in its tendency.

The table in evidence was a table on which a game of chance was played with dice. Whether the table was, as testified to by W. D Hales, "a table with figures on it and dice and money; that the table was marked off, covered with green cloth, with white chalk figures, half-moon shape; when you bet on the man shooting the dice, if you lose they took the money, if you win, they paid the money; they had figures 4, 6, 8, and 10, and some place an open bet, and the field"—or whether it was some other kind of table, it matters not. The evidence shows conclusively that it was a gaming table for gaming and some one was its keeper. That was sufficient. "A crap table is within the statute prohibiting the keeping and exhibiting a gaming table."—*Harmon v. State* (Tex. Cr. App.) 22 S. W. 1038. It is the *use* of the table for gambling which the law condemns.—*Toney v. State, supra.*

10. Charge No. 2 requested by the defendant was calculated to confuse and mislead the jury, and was properly refused. The defendant and some one else might have been the joint keepers of the table, or "some one else" might have been the "keeper" of the table and the defendant might have, at the same time, been interested in "keeping or exhibiting" the table for gaming.

"The instructions must embody correct legal propositions applicable to the issues and evidence, expressed in clear, unambiguous language, free from all involvement and from all tendency to mislead or confuse the jury, and instructions wanting in the above essential elements have been often declared properly refused."— 1 Mayfield's Dig. p. 164, § 30. As applied to the evi-

dence and issues under the evidence in this case, the charge was properly refused.

11. Charge 3 was also properly refused. It is not as broad as the language of the indictment and does not cover all the tendencies of the evidence in the case.

12. Charge No. 4 was also properly refused. The charge was copied from charge No. 66, which was held to be good, in *Pickens v. State,* 115 Ala. 42. 22 South. 551. The charge in this case substituted the word "should" for "would" used in said charge in the *Pickens Case,* and the substitution of "should" for "would" changed the meaning of the charge and gave to it a misleading tendency.

13. The court also properly refused to give charge No. 5 asked in writing by the defendant. It seems to have been copied from *Elmore v. State,* 92 Ala. 51, 9 South. 600, in which the Supreme Court uses the following language: "Certain it is that they ought not to convict without a reasonable belief of guilt, and even such a reasonable belief might not be sufficiently *strong* to exclude a reasonable doubt to the contrary." The charge asked is: "The jury should not convict the defendant without a reasonable belief of his guilt, and even such reasonable belief might not be sufficiently *shown* to exclude a reasonable doubt to the contrary." The above excerpt from *Elmore v. State* is a correct statement of the principle of law. The above charge is speculative and misleading and is not expressed in clear and unambiguous language applicable to the evidence in this case.—*McGee v. State,* 117 Ala. 229, 3 South. 797.

There are certain exceptions to the rulings of the court below shown by this record which we have not referred to. The important questions have all been discussed, and we do not think that the rulings of the

court which have not been touched upon in this opinion are of sufficient importance for us to consider them.

For the errors pointed out, this cause is reversed and remanded.

Reversed and remanded.