## STATE vs. EMANUEL J. BROWN.

1. INDICTMENT AND INFORMATION—SUFFICIENCY—PERSON INJURED—DESCRIPTION.

A count in an indictment for abortion was not rendered insufficient by a clerical omission of the name of the person operated on in one part of the count, where it was apparent that the person named in the previous part of the count was meant.

2. INDICTMENT AND INFORMATION—SUFFICIENCY—NEGATIVING EXCEPTIONS.

An indictment for abortion, alleging that accused, with intent to procure a miscarriage, administered medicine to a pregnant woman, the same not being necessary to preserve her life, was not insufficient as negativing only the necessity of the medicine, and not the necessity of the miscarriage.

3. ABORTION—INDICTMENT—SUFFICIENCY.

Counts in an indictment for abortion, alleging that accused, with intent to procure a miscarriage, used an instrument the character of which was unknown upon a pregnant woman, and that he used an instrument called a tube upon her body and womb, were not insufficient because of their failure to allege the manner in which such instruments were used.

4. CRIMINAL LAW—EVIDENCE—OTHER OFFENSES.

The prosecution cannot prove the commission of other and distinct offenses, though of the same kind with that charged, for the purpose of proving the one charged, or of rendering it more probable that he committed the offense for which he is on trial.

5. CRIMINAL LAW—EVIDENCE—OTHER OFFENSES.

Where criminal intent is a material element of the offense charged, and accused's intent becomes an issue at the trial, proof of other similar offenses, within reasonable limits, is admissible to throw light on his intent.

6. CRIMINAL LAW—EVIDENCE—OTHER OFFENSES.

Where criminal intent need not be specifically proved, or is necessarily established by proof of the commission of the act, evidence of the perpetration or attempted perpetration of similar offenses is inadmissible.

7. CRIMINAL LAW—EVIDENCE—OTHER OFFENSES.

The specific intent to produce a miscarriage by means of the medicine administered or instruments used is an essential ingredient of the crime of abortion, and must be proved, and hence may be shown by evidence of similar offenses.

8. CRIMINAL LAW—EVIDENCE—OTHER OFFENSES.

On a trial for abortion, evidence of similar offenses can be considered by the jury only when satisfied from the other evidence that accused committed the acts charged, and then only on the question of his intent in so committing them.

9. ABORTION—ELEMENTS—"PROCURING MISCARRIAGE".

Under Act Feb. 13, 1883 (17 *Del. Laws, c.* 226) § 2, providing that every person who, with intent to procure the miscarriage of any pregnant woman, shall administer any medicine, etc., whether the miscarriage is accomplished or not, shall be guilty of a felony, "procuring a miscarriage" is the unlawful destruction of, or the bringing or causing to be brought forth prematurely, the fœtus or unborn offspring of a pregnant woman, at any time before birth according to the course of nature.

10. ABORTION—BURDEN OF PROOF.

On a trial for abortion, the state must prove to the satisfaction of the jury that accused administered or prescribed medicine or used an instrument, as alleged, with intent to procure the miscarriage of a pregnant woman, or woman supposed by him to be pregnant, and that the miscarriage was not necessary to preserve her life.

11. ABORTION—DEFENSES.

A person administering medicine or using instruments with intent to procure a miscarriage is guilty of abortion, whether or not he actually causes the miscarriage; and hence it was no defense that the miscarriage was actually caused by the woman's own use of an instrument, medicine, or other means.

12. ABORTION—DEFENSES.

Accused's reluctance or unwillingness to perform the operation, or the woman's consent or entreaty, were not defense to a charge of abortion, if he subsequently committed the act charged.

13. ABORTION—EVIDENCE—INTENT.

The intent to procure a miscarriage may be shown by accused's express confession or declaration, or by his acts and conduct, and other circumstances from which it is naturally and reasonably inferable.

14. CRIMINAL LAW—WEIGHT AND SUFFICIENCY—GOOD CHARACTER.

Testimony as to accused's good character or reputation should be considered by the jury as other evidence tending to prove his innocence, and should be given such weight as, under the circumstances of the case, it is reasonably entitled to when considered in connection with the other evidence.

15. CRIMINAL LAW—CREDIBILITY—PROVINCE OF JURY.

The jury should reconcile conflicts in the evidence, if possible; but, if they cannot do so, they should accept the testimony of those witnesses who they think, under all the facts and circumstances, are most entitled to credit and belief, and should reject the testimony of those whom they think unworthy of belief.

16. CRIMINAL LAW—CREDIBILITY—PROVINCE OF JURY.

In determining the credibility of witnesses and the degree of credit to be given to their testimony, the jury may consider their bearing on the stand, their apparent fairness or unfairness, their interest or bias, if any, their intelligence and opportunity of knowing and remembering the facts, and any other facts and circumstances disclosed by the evidence which indicate to the jury their reliability or unreliability.

17. CRIMINAL LAW—DEGREE OF PROOF REQUIRED.

Every person accused of crime is presumed to be innocent, until proven guilty beyond a reasonable doubt.

18.  CRIMINAL LAW—"REASONABLE DOUBT".

A "reasonable doubt" which will justify an acquittal, is not a mere imaginary, whimsical, or even possible doubt of accused's guilt, but is such a real and substantial doubt, naturally arising out of all the relevant evidence in the case, as intelligent and impartial men may reasonably entertain after a careful consideration of all such evidence.

*(October* 25, 1912.)

PENNEWILL, C. J., and WOOLLEY, J., sitting.

*W. Watson Harrington,* Deputy Attorney General, and *Caleb S. Layton* for the state.

*Alexander M. Daly* and *John B. Hutton* for the defendant.

Court of General Sessions, Kent County, October Term, 1912.

INDICTMENT FOR ABORTION (No. 9, April Term, 1912), alleging, in substance, that the accused, with the intent to procure the miscarriage of one Mary Tibbett, a young married, pregnant woman, supposed by the accused to be pregnant, did administer and prescribe medicine, and use a certain instrument—a tube or cathetar—the same not being necessary to preserve the life of her.

The facts appear in the opinion and the charge.   The indictment in substance is stated in the charge.

At the April Term, 1912, counsel for defendant moved to quash the said indictment, because it alleged that the administration or prescription of the medicine was not necessary to preserve the life of Mary Tibbett,—the material allegation being that the *miscarriage* was not necessary to preserve her life.

This applies to the first two counts.

46 *Ind.* 303;  *State v. Jones,* 4 *Penn.* 109, (opinion of the dissenting judge).   *State v. Quinn,* 2 *Penn.* 339, did not rule upon the question as presented here.

PENNEWILL, C. J.:—The question seems to us to be the same as decided by a majority of the court in the case of *State v. Jones.* Sustaining the contention of the defense in this case would be practically overruling that case.

*Mr. Hutton:*—In the case of *State v. Parm and Viney,* 5 *Penn.* 556, the court held that counseling was not within the statute.   That applies to the third count.   The objection to the

fourth and fifth counts—that the defendant did use a certain instrument upon her the said Mary Tibbett, which is the extent to which the use is alleged—is that that is absolutely an insufficient statement of the manner of using the instrument. Even though there is a general averment of the intent with which it was used, the mere statement that he did use an instrument upon her is not a sufficient statement of the manner in which it was used.

As to the sixth count, counsel for defendant moved to quash the same as indefinite and uncertain, because of the omission in the last part of the count of the name of the person alleged to have been operated upon.

*Harrington*, Deputy Attorney General, replied, contending, that the objection as to the third count had been passed upon by the court and sustained in a similar indictment, in the case of *State v. Quinn*, 2 *Penn.* 339, and the other objections had been passed upon and decided adversely in the case of *State v. Parm and Viney*, 5 *Penn.* 556.

PENNEWILL, C. J.:—We hold that the first, second, fourth, fifth and sixth counts are sufficient, and the third count is insufficient. The motion to quash is sustained as to the third count, and overruled as to the others.

At the trial, (October Term, 1912) after proving by the prosecuting witness, Mary Tibbett, the facts as alleged in the indictment, the state called one H. as a witness, and offered to prove by him that the defendant upon an occasion near the time when the offense charged in the indictment was committed, also committed an abortion upon the wife of said H. by the same means as charged in the indictment, as tending to show the intent with which the act charged was committed. This was objected to by counsel for defendant as wholly irrelevant and immaterial; but by agreement the evidence was admitted temporarily, subject to be stricken out upon motion of defendant's counsel, and argument at the conclusion of the testimony.

When the testimony was concluded on both sides counsel for defendant moved to strike out the above testimony of H. as inadmissible and irrelevant.

Argument.

ARGUMENT IN SUPPORT OF MOTION TO STRIKE OUT TESTIMONY.

The general principle of law as laid down in all the authorities is that evidence tending to prove a distinct crime, although it may be similar to the one for which defendant is on trial, is wholly inadmissible. 12 *Cyc.* 405; 11 *Enc. of Ev.* 798-799, and many cases cited in thirty-seven different states.

In some jurisdictions evidence of other crimes is admissible to prove motive or intent. Such evidence has been admitted in cases of embezzlement, false pretense, forgery, counterfeiting, receiving stolen goods, murder, etc. 11 *E. & E.* 802-3-4; 12 *Cyc.* 408-409.

Evidence of similar crimes is not admissible for the purpose of raising a presumption that defendant committed the particular crime, but only in cases where the intent is material and there is uncertainty as to such intent. 11 *E. & E.* 799 and note.

In abortion cases we have found no cases in which evidence of similar offenses was admitted. *Land v. State,* (*Md.*) 7 *Atl.* 400; *People v. Seaman,* 107 *Mich.* 348.

Where the intent is a necessary conclusion from the act done, proof of other offenses of a similar character is inadmissible and violates the rule that the evidence must be confined to the issue. If the instrument was used as testified to on the behalf of the state, there is no room for an inference that it was used for any other purpose than that charged in the indictment; and, therefore, evidence of other offenses to show intent is inadmissible. 122 *Mich. p.* 388, distinguished from 107 *Mich.* 348; *People v. Gibbs,* 93 *N. Y.* 470; *People v. Stuart,* 85 *Cal.* 174.

It is only in those cases where the intent is uncertain that evidence of other offenses is admissible. *Land v. State* (*Md.*) 7 *Atl.* 400; *People v. Seaman,* 107 *Mich.* 348.

ARGUMENT OF STATE, CONTRA.

The doctrine of admissibility of other acts to show knowledge or intent, has been recognized in several cases in this state. *State v. Tindal,* 5 *Harr.* 488 (1854); *State v. Friedman,* 3 *Penn.* 403; *State v. Hartnett,* 7 *Penn.* 204; *State v. Effler,* 2 *Boyce* 92, 78 *Atl.* 411.

In the *Tindal case*, the defendant was indicted for passing counterfeit money, and evidence was admitted of the passing of other counterfeit money, of the same kind at other times, to show guilty knowledge.

In the *Friedman case*, the defendant was charged with receiving stolen goods. Evidence of other similar transactions was also admitted, to show guilty knowledge. The report of this case does not take up this point, but I am informed that such evidence was admitted.

In the *Hartnett case*, the defendant was indicted for obtaining money under false pretenses. I am informed that evidence of other similar acts was offered, and while ruled out by the court, it was on the ground of lack of connecting testimony, the rule of law itself was admitted by tacit consent.

In the *Effler case*, the defendant was indicted for conspiracy to commit larceny, and evidence of similar transactions on other occasions was admitted for the purpose of showing guilty intent.

The case of *State v. Records* as well as the case of *State v. King*, tried in Sussex County at the February Term, 1911, not reported, does not contradict the rule to be deduced from the above cases, as the evidence offered in both of these cases was not for the purpose of showing knowledge or intent, but for the purpose of showing a plan or scheme of a general design on the part of the defendants to buy votes, which evidence the court held to be too remote.

In the case at bar the intent of the prisoner is not only the most material element, but it could not be contended that it was shown by the act itself. The alleged acts committed by him would not be criminal unless guilty knowledge and intent existed in his mind at the time. *Wharton, p.* 516 and 1667.

PENNEWILL, C. J., delivering the opinion of the court:
A motion has been made by counsel for the defendant that all the evidence of the witness Hill be stricken out because the rule of law that permits the proof of other transactions by the defendant similar in character to that charged in the indictment, and

Opinion.

committed at or about the same time, is not applicable to the present case.

[4] It is undoubtedly the general rule that the prosecution is not allowed to prove the commission of another and distinct offense, though of the same kind with that charged, for the purpose of proving the latter, or for the purpose of rendering it more probable in the minds of the jury that the defendant committed the offense for which he is on trial.

[5] But, wherever the intent with which an alleged offense was committed is a material element of the charge, and such intent becomes an issue at the trial, proof of other similar offenses, within certain reasonable limits, is admissible, as tending to throw light upon the intention of the accused in doing the act complained of.

Wigmore in his work on *Evidence* (*Volume* 1, 302) says: "In most cases of conspiracy and fraud, the question of intent, or purpose or design in the act done, whether innocent or illegal, whether honest or fraudulent, rarely admits of direct and positive proof; but it is to be deduced from various circumstances of more or less stringency and often occurring, not merely between the same parties, but between the parties charged with the conspiracy or fraud and third persons. And in all cases where the guilt of the party depends upon the intent, purpose or design with which the act was done, or upon his guilty knowledge thereof, I understand it to be a general rule that collateral facts may be examined into, in which he bore a part, for the purpose of establishing such guilty intent, design, purpose or knowledge."

The rule is very well stated in *People v. Seaman*, 107 *Mich.* 357, 65 *N. W.* 206, 61 *Am. St. Rep.* 326, as follows:

"The general rule is that evidence shall be confined to the issue, and that on a trial for felony the prosecution will not generally be permitted to give evidence tending to prove the defendant guilty of another distinct and independent felony. There are, however, exceptions to this rule. * * * Where it is necessary to show a particular intent in order to establish the offense charged, proof of previous acts of the same kind is admissible for the purpose of proving guilty knowledge or intent. * * * Upon prin-

ciple and authority, it is clear that where a felonious intent is an essential ingredient of the crime charged, and the act done is claimed to have been innocently or accidentally done, or by mistake, or when the result is claimed to have followed an act lawfully done for a legitimate purpose, or where there is room for such an inference, it is proper to characterize the act by proof of other like acts producing the same result, as tending to show guilty knowledge, and the intent or purpose with which the particular act was done, and to rebut the presumption that might otherwise obtain.    *    *    * "

[6]   Where, however, the intent is not required to be specifically proved, or from the nature of the offense under investigation proof of its commission as charged necessarily establishes the criminal intent, or the intent is a necessary conclusion from the act done, evidence of the perpetration, or attempted perpetration, of other like offenses, should not be admitted.

These rules were recognized by the court in the decisions cited from this state.

In *State v. Tindal*, 5 *Harr.* 488, the defendant was indicted for passing counterfeit money, knowing that the same was counterfeit money.   Proof that the defendant passed counterfeit money would not be sufficient to sustain the indictment in that case.   That might have been done innocently.   It was incumbent upon the state to show the guilty knowledge of the defendant, his intent to pass counterfeit money, and similar acts were admitted for that purpose only.

In *State v. Freedman*, 3 *Penn.* 403, 53 *Atl.* 356, the indictment charged the receiving stolen goods.   It was not enough for the state to show that the defendant received stolen goods, but it was also necessary to show that the defendant knew they were stolen.   Similar acts were admitted as tending to prove that the defendant had the guilty knowledge that the goods were stolen.

The *Hartnett case*, 7 *Penn.* 204, 74 *Atl.* 82, is not at all in point, the question involved being entirely different from the one here.

In none of these cases was the testimony allowed for the purpose of proving the offense charged, but to be considered by the jury in determining the knowledge or intent of the defendant

when they were satisfied by other testimony that the accused passed the counterfeit money, received the stolen goods, or entered into an unlawful conspiracy or combination, as charged. Proof of such facts would not carry with it the evident implication of a criminal knowledge or intent, and therefore collateral facts, such as similar acts, were held to be admissible as tending to prove such knowledge or intent.

[7] In the present case the defendant is charged with giving medicine and using an instrument with the intent to procure a miscarriage. The indictment, as well as the statute upon which it is based, make the intent with which the medicine is administered and the instrument is used, an essential part or ingredient of the charge, and it is incumbent upon the state to prove such specific intent before a conviction can be secured. The very gravamen of the offense charged being the intent with which the defendant committed the acts alleged, it is not sufficient to prove the giving of the medicine because it may be given for a proper purpose. It is not enough to prove the use of the instrument merely because such an instrument might be employed for a legitimate purpose. The specific intent or purpose to produce a miscarriage must be proved before the guilt of the accused is established, and the performance of similar operations on the same or other women about the same time, we think are admissible. Such operations, however, are not admissible to prove that the defendant committed the acts charged, viz., gave the medicine and used the instrument mentioned in the indictment, but are only to be considered by the jury in determining the intent with which the acts charged were done, when the jury are satisfied by other testimony that the medicine was given, or the instrument was used by the defendant in the manner charged in the indictment.

From the cases cited such appears to have been the position taken by the courts of many states, and is recognized generally by the text writers. Indeed, abortion, or the attempt to procure miscarriage, are offenses in the trial of which evidence of similar acts has been generally admitted. The rule permitting the introduction of such evidence is applicable to such cases because the law

makes the intent with which the alleged act is done, or attempted, an essential ingredient of the charge, and places the burden upon the prosecution to prove the specific intent. *Underhill on Evidence,* 410; *Commonwealth v. Corkin,* 136 *Mass.* 429; *People v. Seaman,* 107 *Mich.* 348, 65 *N. W.* 203, 61 *Am. St. Rep.* 326; *Underhill, Criminal Evidence,* 345; *Wigmore on Evidence,* §§ 301, 302, 359; *Wharton on Criminal Evidence,* § 887; *Commonwealth v. Corkin,* 136 *Mass.* 429 (other act, same woman); *Commonwealth v. Holmes,* 103 *Mass.* 440 (other acts, different women); *People v. Sessions,* 58 *Mich.* 594, 600, 601, 26 *N. W.* 291 (other women); *Clark v. Commonwealth,* 111 *Ky.* 443, 63 *S. W.* 740, 745 (other women); *People v. Seaman,* 107 *Mich.* 348, 65 *N. W.* 203, 206, 61 *Am. St. Rep.* 326 (other women); *People v. Molineux,* 168 *N. Y.* 264, 61 *N. E.* 286, 62 *L. R. A.* 194; *Wharton, Criminal Evidence, Vol.* 1, *p.* 78 *et seq.; Scott v. People,* 141 *Ill.* 195, 30 *N. E.* 329; *Commonwealth v. Follansbee,* 155 *Mass.* 274, 29 *N. E.* 471.

[8] We decline to strike out the testimony objected to, but we do instruct the jury now, as we shall also do in the charge, that the testimony of the witness Hill cannot be considered by them at all in determining whether the defendant committed the acts charged in the indictment, that is, gave the medicine and used the instrument, mentioned. Such testimony, offered by the state to show that defendant performed an operation on Hill's wife similar to the one charged in the indictment, can be considered only when the jury are satisfied from other evidence that the defendant did commit the acts charged, and even then it can be considered only for the purpose of determining whether he committed those acts with the unlawful intent to procure a miscarriage.

At the close of the testimony, the following prayers for instructions to the jury were presented:

## STATE'S PRAYERS.

The material element in this case is the proof on the part of the state that the defendant intended to produce the miscarriage of Mary Tibbett at the time he performed the alleged operation upon her.

And if such an intent existed in the mind of the said defendant at the time he performed the alleged operation upon the said Mary Tibbett it is no defense that the means used could not have caused the said Mary Tibbett to miscarry; nor would the fact that the said Mary Tibbett was not then pregnant be a defense if the said defendant then thought that she was in a pregnant condition.

If the jury believe that the defendant, Emanuel J. Brown, inserted a rubber tube or other instrument into the private parts of Mary Tibbett, believing her to be a pregnant woman, and with intent to cause her to miscarry, and they further believe that such miscarriage was not necessary to preserve her life, the verdict should be guilty.

### DEFENDANT'S PRAYERS.

Counsel for defendant prayed the court to charge the jury as follows:

*First.* That in order to warrant the jury in finding a verdict of guilty in the present case, the burden is on the state to prove to their satisfaction beyond a reasonable doubt:

(a) That the defendant, Emanuel J. Brown, on or about January ninth, of the present year, in this county, used an instrument as alleged in the indictment.

(b) That he so used it then and there with-the intent to procure the miscarriage of Mary Tibbett, she being then and there pregnant, or supposed by the said defendant to be so pregnant.

(c) That said miscarriage was not then and there necessary to preserve the life of the said Mary Tibbett. *State v. Magnell, 3 Penn.* 307, 51 *Atl.* 606.

*Second.* That the fact that the woman is a consenting party to the alleged abortion may be considered by the jury as affecting her credibility as a witness. *Com. v. Brown,* 121 *Mass.* 69; *Watson v. State,* 9 *Tex. App.* 237; *Frazer v. People,* 54 *Barb.* (*N. Y.*) 306; *Commonwealth v. Wood,* 11 *Gray* (*Mass.*) 85; *Commonwealth v. Drake,* 124 *Mass.* 21; 1 *Enc. of Ev.* 60; 1 *A. & E.* 192.

*Third.* If the jury should believe that there was a payment of money by the defendant, but such payment was made merely to buy his peace, and without any direct admission of guilt, they should not consider such payment as evidence against the defendant. *State v. Nugent,* 134 *Iowa,* 237, 111 *N. W.* 927; *State v. Emerson,* 48 *Iowa,* 172; *Stinson v. State,* 3 *Ala. App.* 74, 57 *South.* 509; *Martin v. State,* 2 *Ala. App.* 175, 56 *South.* 64; *Sanders v. State,* 148 *Ala.* 603, 41 *South.* 466; 2 *Wigmore on Ev.* 1231, § 1061; *Wilson v. State,* 73 *Ala.* 527, 532; *State v. Bridges,* 86 *Miss.* 377, 38 *South.* 679.

*Fourth.* That the defendant is entitled to the benefit of every reasonable doubt. Every presumption is in favor of his innocence. If the facts shown are capable of explanation on any reasonable hypothesis in favor of innocence, there can be no rightful conviction. *State v. Jones,* 4 *Penn.* 117, 53 *Atl.* 858; *State v. Aiken,* 109 *Iowa,* 643, 80 *N. W.* 1073; *Howard v. People,* 185 *Ill.* 552, 57 *N. E.* 441; 1 *Enc. of Ev.* 56.

*Fifth.* That the defendant's previous good character, if shown, is a fact which should be taken into consideration like any other fact in determining the defendant's guilt or innocence.

PENNEWILL, C. J., charging the jury:

Gentlemen of the jury:—The indictment upon which the defendant is being tried charges as follows:

*First,* that Emanuel J. Brown, the defendant, on the ninth day of January of the present year, in this county, unlawfully, feloniously, and with the intent to procure the miscarriage of one Mary Tibbett, she the said Mary Tibbett then and there being a pregnant woman, then and there supposed by the said Emanuel J. Brown to be pregnant, did administer to her the said Mary Tibbett certain medicine (the same not being necessary to preserve the life of her the said Mary Tibbett), against the form of the act of the General Assembly.

*Second,* that the said Emanuel J. Brown, at the county aforesaid, at the time aforesaid, did unlawfully, feloniously, and with the intent to procure the miscarriage of one Mary Tibbett, she the said Mary Tibbett then and there being a pregnant woman, then

and there supposed by the said Emanuel J. Brown to be pregnant, did prescribe for her the said Mary Tibbett, certain medicine (the same not being necessary to preserve the life of her the said Mary Tibbett), etc.

(The third count of the indictment was stricken out.)

*Fourth*, that the said Emanuel J. Brown, at the time and place aforesaid, unlawfully, feloniously, and with the intent to procure the miscarriage of one Mary Tibbett, she the said Mary Tibbett then and there being a pregnant woman, then and there supposed by the said Emanuel J. Brown to be pregnant, did use a certain instrument upon her the said Mary Tibbett, the kind and character of which instrument is to the jurors aforesaid unknown, so intending to procure the miscarriage of her the said Mary Tibbett (the same not being necessary, etc.), against the act of assembly.

*Fifth*, that the said Emanuel J. Brown, at the time and place aforesaid, did unlawfully, feloniously, and with the intent to procure the miscarriage of one Mary Tibbett, said Mary Tibbett then and there being a pregnant woman, etc., use a certain instrument commonly called a tube, in and upon the body and womb of her the said Mary Tibbett, so intending to procure the miscarriage of her the said Mary Tibbett, etc., aganist the act of assembly.

*Sixth*, that the said Emanuel J. Brown, at the time and place aforesaid, unlawfully, feloniously, and with the intent to procure the miscarriage of one Mary Tibbett, she the said Mary Tibbett then and there being a pregnant woman, then and there supposed by the said Emanuel J. Brown to be pregnant, did use a certain instrument upon her the said Mary Tibbett, so intending to procure the miscarrigae of her the said Mary Tibbett, etc., against the form of the act of assembly.

[9] On February 13, 1883, the General Assembly of this state passed an act entitled "An act to punish the procurement of abortion" (17 *Del. Laws*, c. 226), and *section* 2 of said act, under which the defendant is now on trial, is as follows:

"Every person who, with the intent to procure the miscarriage of any pregnant woman or women supposed by such person to be pregnant, unless the same be necessary to preserve her life, shall

administer to her, advise, or prescribe for her, or cause to be taken by her any poison, drug, medicine, or other noxious thing, or shall use any instrument or other means whatsoever, or shall aid, assist, or counsel any person so intending to procure a miscarriage, whether said miscarriage be accomplished or not, shall be guilty of a felony," etc.

[10]  Procuring a miscarriage, within the meaning and purpose of this act, is the unlawful destruction, or the bringing or causing to be brought forth prematurely the fœtus or unborn offspring of a pregnant woman, at any time before birth according to the course of nature.   In order to warrant the jury, in the present instance, in finding a verdict of guilty under this statute, the burden is on the state to prove to your satisfaction, beyond a reasonable doubt, first, that the prisoner, Emanuel J. Brown, on or about the ninth day of January, of the present year, in this county, administered or prescribed medicine; or used an instrument, as alleged in the indictment; second, that he so administered or prescribed medicine, or used the instrument, then and there, with the intent to procure the miscarriage of Mary Tibbett, she being then and there pregnant, or the said prisoner supposing her to be so pregnant; and, third, that said miscarriage was not then and there necessary to preserve the life of the said Mary Tibbett.

If you find that the state has failed to prove beyond all reasonable doubt all, or any one, of these essential facts and constituent elements of this alleged felony, it will be your duty to render a verdict of not guilty.

[11]  It is not necessary for the state to prove that the prisoner actually caused or accomplished the alleged miscarriage of Mary Tibbett.   It will be sufficient, so far as respects this element of the offense here charged, if you are satisfied beyond a reasonable doubt, that the prisoner administered or prescribed certain alleged medicine, or used the alleged instrument with the intent to procure the miscarriage of Mary Tibbett, whether such intent was accomplished or not.   If you are so satisfied, it will be immaterial, in your determination of this case, whether or not Mary Tibbett had herself caused the alleged miscarriage by her own

use of any instrument, medicine or other means, and therefore of no avail for the defense of the prisoner.

[12] "Nor would the consent of Mary Tibbett to the prisoner's attempt to procure her miscarriage, nor the prisoner's reluctance or unwillingness to perform the operation be a sufficient or lawful defense, in view of the positive provisions of the statute, if the prisoner subsequently prescribed the medicine or used the instrument, as alleged in the indictment."

[13] The intent to procure the miscarriage may be shown by direct evidence of the intent—that is, by the express confession or declaration of the accused; or such intent may be proved by the acts and conduct of the prisoner, and other circumstances, from which the jury may naturally and reasonably infer the intent charged. In this connection we again call your attention to the testimony of the witness Hill respecting an operation alleged to have been performed on his wife similar to the one charged in this indictment. We say to you that such testimony cannot be considered by you at all in determining whether the defendant committed the acts charged in the indictment, that is, administered or prescribed the medicine or used the instrument alleged. Such testimony offered by the state to show that the defendant performed an operation on the wife of Hill similar to the one charged in the indictment can be considered only when the jury are satisfied from other evidence in the case that the defendant did commit the acts charged, and even then the testimony given by Hill can be considered only for the purpose of determining whether the defendant committed those acts with the unlawful intent to procure a miscarriage.

[14] In respect to good character, we say that testimony respecting the good character or reputation of the accused, is to be considered by the jury as any other evidence tending to prove the innocence of the accused, and is to be given just such weight by the jury as under the circumstances of the case it is reasonably entitled to when considered in connection with all the other evidence.

[15, 16] When the evidence is conflicting in any case it is the duty of the jury to reconcile such conflict if they can. If, how-

ever, they cannot do so, it is their duty to accept and be governed by the testimony of those witnesses whom they think, under all the facts and circumstances of the case are most entitled to credit and belief, and reject the testimony of such witnesses as they think unworthy of belief.    In determining the credibility of witnesses and the degree of credit that should be given to their testimony, the jury may consider their bearing upon the stand, their apparent fairness or unfairness, their interest or bias if any they have, their intelligence and opportunity of knowing and remembering the things about which they testify, and any other facts or circumstances disclosed by the evidence which indicate to the jury the reliability or unreliability of the witnesses, or any of them.

[17]    Every accused person is presumed to be innocent until he is proven guilty beyond a reasonable doubt.

[18]    A reasonable doubt, in legal contemplation, is not a mere imaginary, whimsical or even possible doubt of the guilt of the accused, but is such a real and substantial doubt naturally arising out of all the relevant evidence in the case as intelligent and impartial men may reasonably entertain after a careful consideration of all such evidence.

The case is now submitted for your verdict in accordance with the facts as you shall find them, and with the law as the court has given it for your guidance.

Verdict, not guilty.