(108 So. 620)

## SEAY v. STATE. (4 Div. 139.)

(Court of Appeals of Alabama. Nov. 24, 1925.
Rehearing Denied April 6, 1926.)

**1. Criminal law ⊜112(1).**

Where crime is begun in one county and consummated in another, as where forged instrument is uttered by sending it by mail, venue is in either county, in view of Code 1923, § 4894.

**2. Forgery ⊜47.**

Where evidence supported charges of forgery and uttering forged instrument, affirmative instructions *held* properly refused.

**3. Criminal law ⊜815(4)—Charge as to burden of proving intent to defraud when forged note was written held properly refused, as ignoring evidence applicable to charge of uttering.**

In prosecution for forgery and uttering forged instrument, charge that burden was on state to show intent to defraud when note was written was properly refused as ignoring evidence applicable to second count.

**4. Criminal law ⊜1111(1).**

Record of indictment as it appears in transcript imports verity.

**5. Criminal law ⊜406(3), 517(1).**

Confessions and admissions of accused implying guilt are admissible when shown to have been made voluntarily.

**6. Criminal law ⊜531(½).**

Although confessions of accused are admitted before proof of their voluntary nature, supplying such omissions cures the error.

**7. Criminal law ⊜1137(5)—Where letter was present in court and equally open to defense, exception to introduction of only parts thereof by prosecution held not available.**

Where letter was present in court and equally open to defense, exception to introduction of only parts thereof by prosecution *held* not available, as accused could have offered remainder.

**8. Forgery ⊜37—In prosecution of subagent of insurance company for forgery of premium note and mortgage, testimony that part of premium due company had been paid it held relevant.**

In prosecution of subagent of insurance company for forging note and mortgage securing it, testimony that they purported to have been given for insurance premium, and that amount due insurance company from agent as its part of premium had been sent it, *held* relevant.

**9. Criminal law ⊜452(4).**

Insurance agents, having qualified as being familiar with handwriting of their subagent, *held* competent to testify that letter accompanying forged note was in his handwriting.

**10. Criminal law ⊜444.**

In prosecution of subagent of insurance company for forgery of premium note and mortgage, exclusion of statement of account between accused and agent *held* proper, where not identified as having been made and sent by agent to accused.

**11. Criminal law ⊜720(7).**

In prosecution of subagent of insurance company for forgery of premium note and mortgage securing it, argument of solicitor that on strength of application in question agent had paid insurance company, being justified by evidence, *held* not error.

Appeal from Circuit Court, Barbour County; J. S. Williams, Judge.

Henry N. Seay was convicted of forgery, and he appeals. Affirmed.

Certiorari denied by Supreme Court in Seay v. State, 214 Ala. 666, 108 So. 622.

Charge 2 refused to defendant is as follows:

"The court charges the jury that the state assumes the burden of showing them from the evidence of the witnesses that the defendant intended at the time it is charged that the note was written to defraud, and the jury must be convinced by the evidence beyond all reasonable doubt that such intent did exist at that time or they cannot convict."

With reference to the argument of the solicitor, the bill of exceptions recites:

"In the course of his argument to the jury, the solicitor stated in substance that on the strength of the application here in question the Folmars paid the insurance company. The defendant objected to that line of argument, and moved to exclude it on the ground that there was no testimony to that effect. The court overruled said objection and motion, and to such ruling of the court the defendant duly excepted.

Sollie & Sollie, of Ozark, for appellant.

Harwell G. Davis, Atty. Gen., for the State.

Briefs of counsel did not reach the Reporter.

SAMFORD, J. The case as made by the state's evidence discloses: Folmar & Sons were the general agents of a life insurance company and had their place of business at Troy, Pike county. They made all collections of premiums for policies issued and delivered, and became liable to the company for its part of premiums upon policies delivered. Defendant lived in Barbour county, and was a subagent of Folmar & Sons, and under contract with them to solicit insurance and to take applications therefor, to be sent to Folmar & Sons, who in turn forwarded same to the company and procured the issuance of the policies called for in application. These policies, when returned, were turned over to defendant for delivery to the insured, at which time payment of the first premium was made. Of this first premium defendant was entitled to 60 per cent. This

first premium was rarely paid in money, and defendant was allowed to take notes therefor, payable to Folmar & Sons, the payment being guaranteed in each instance by defendant. These notes were held by Folmar & Sons as collateral security for such advances in money as was made to defendant and also to secure defendant's guarantee on all notes taken by him. During the period of this contract defendant delivered many policies, and for same secured and delivered notes payable to Folmar & Sons, to be held as aforesaid, 60 per cent. of which when collected to be credited to the account of defendant against his indebtedness. The account and dealings between the parties covered many items and a considerable period of time. Under the foregoing arrangement a policy of insurance on the life of R. V. Fuqua was issued and turned over to defendant to be by him delivered and collected for. Shortly thereafter there was delivered to Folmar & Sons a note and mortgage, purporting to have been signed by R. V. Fuqua and witnessed by defendant, for the amount of the first premium, to wit, $147, which note and mortgage went into the account of defendant with Folmar & Sons, as a basis for further advances to be made by Folmar & Sons to defendant, on the business written and delivered. The policy for which this note and mortgage was given was delivered to defendant and has never been returned to Folmar & Sons. Upon demand being made on Fuqua for payment of the note and mortgage, he denied its execution and claimed that his name had been forged thereto.

[1] There was much testimony and many exceptions with reference to how the note and mortgage was delivered to Folmar & Sons, whether by mail or otherwise. That the note and mortgage was delivered to Folmar & Sons, accompanied by a letter written by defendant and referring to this particular note and mortgage, is not disputed, and that upon its receipt Folmar & Sons accepted it as genuine and dealt with it in defendant's account, as such. In this evidence was sought to be raised the question of venue, i. e., that the offense of uttering, charged in the second count of the indictment, was committed, if at all, in Pike county, and not in Barbour. However the evidence may be considered, it presents a crime begun in one county and consummated in another, thereby placing the venue in either county. Code 1923, § 4894. Hence the various rulings of the trial court relative to the receipt of the forged paper through the mail, while technically erroneous, could not have injuriously affected the defendant's rights on this trial.

[2] There was evidence supporting the charge both of forgery and of uttering a forged instrument. Charges asking affirmative instructions were properly refused.

[3] The refused charge not numbered, which for convenience we mark 2, was properly refused, for that it ignores the evidence as applicable to the second count of the indictment.

[4] The record of the indictment as it appears in the transcript shows a proper indorsement by the clerk. The record imports verity.

[5, 6] Confessions and admissions of defendant implying guilt, when shown to have been made voluntarily, are admissible in evidence, and while the confessions in this case were admitted before proof of its voluntary nature, the witness immediately supplied the omission, thereby curing the error.

Whatever error may have been committed by the court in admitting testimony of the agency of Lightfoot could not have affected defendant's cause one way or another. Lightfoot did nothing, took no part in the transactions, and was not a witness in the case.

[7] The state offered extracts from a letter written by defendant to Folmar & Sons, relative to the note claimed here to have been forged, which letter was then present in court and in the hands of the witness. Objection was made on the ground that the whole letter was not offered. The letter was equally open to the defense as to the state, and if there were other parts of the letter bearing on the question at issue and favorable to defendant, defendant should have offered them. In that case, if the court had refused to permit defendant to have the benefit of such evidence, a question would here be presented affecting the rights of defendant on this trial. As here presented, it would appear that defendant was more interested in the exception than in the contents of the letter. Webb v. State, 100 Ala. 47, 14 So. 865; Martin v. State, 2 Ala. App. 175, 56 So. 64.

[8] It was relevant to show by Boyd, the manager of Folmar & Sons, that this alleged forged note and mortgage purported to have been given for an insurance premium, and that Folmar & Son acting, as was the agreement between all parties, sent to the company its part of the premium so secured.

[9] Boyd and Folmar having qualified as being familiar with the handwriting of defendant, it was competent for them to testify that the letter accompanying the forged note was in the handwriting of defendant.

[10] The statement purporting to be a statement of account between Folmar & Sons and defendant, dated June 19, 1922, is not identified as having been made and sent by Folmar & Sons to defendant, and hence was properly excluded.

[11] The argument of the solicitor to the jury was justified by the evidence.

The motion for a new trial was properly overruled.

We find no error in the record, and the judgment is affirmed.

Affirmed.