PHILIP BINDERNAGLE, PLAINTIFF IN ERROR, v. THE STATE OF NEW JERSEY, DEFENDANT IN ERROR.

1. Error cannot be assigned upon an exception taken to the mere refusal of the court, in the trial of a criminal indictment, at the close of the evidence for the state, or on the part of the defendant, to instruct the jury to acquit.

2. The acts and conduct of the persons who are the inmates of a house charged to be disorderly, and their language, in relation to their acts and conduct and in connection therewith at the same time, are admissible and competent evidence to establish the character of the house, whether the person alleged in the indictment as the keeper thereof be

present at the time or not. This evidence can only be of use and effect upon the question whether the place is disorderly in a legal sense, and not to implicate the defendant charged with the offence of keeping it; and before he can be convicted of such offence evidence sufficient to establish his connection, management or control of such a place must be adduced.

3. It is the duty of the trial court to define the elements of fact necessary to constitute a disorderly house, but whether the proof is sufficient to establish that conclusion, as well as whether by such proof and the other evidence the person charged in the indictment is responsible as matter of fact for the management and control of the same, are questions which must be submitted to the jury, and which are entirely within the province of the jury to determine.

On error to the Hudson Quarter Sessions.

Argued at February Term, 1897, before Justices DEPUE, VAN SYCKEL and LIPPINCOTT.

For the plaintiff in error, *Allan L. McDermott.*

For the state, *Charles H. Winfield,* prosecutor of the pleas.

The opinion of the court was delivered by

LIPPINCOTT, J. The plaintiff in error, defendant below, was indicted for keeping a disorderly house in the township of Union, in the county of Hudson. The indictment charged that the defendant kept a place in that township in which he permitted people to engage in betting and wagering on the events of races of horses, mares or geldings. The indictment was presented at the April Term, 1896, and the offence was charged to have been committed between March 1st, 1895, and the time the indictment was presented.

No objections were taken to the form of the indictment before the trial, and no errors have been assigned drawing in question its validity.

The evidence introduced and, as it stands, undisputed, shows at this place there are three buildings; one is a brick building in which the defendant kept a saloon. The main floor

contained a bar-room and to the north of the bar-room and connected with it was a restaurant; still to the north of the restaurant and immediately adjoining it was a long frame building, and from this building a piazza ran along the front of the saloon and restaurant. There does not appear to have been any door leading from the piazza into the long frame building. In front of this frame building there were steps leading up to a door, which the evidence shows to have been closed during the time laid in the indictment. Access to this building was gained by steps and a door in what may be called the rear of the building. Access to it also could be gained by going into the saloon in front thereof, and passing out the rear and along a pathway to this door. On the south side of the bar-room, close to it, but not directly connected therewith, was another frame building. Access to this building was gained by a door opposite the end of, but not connected with, the piazza, and also by another door on the southerly side of the building. All these buildings stood in a row, directly opposite the ferry landing of the ferry from the city of New York. There was no fence or obstruction between the rear of the bar-room and the rear of the other buildings.

The evidence is conclusive that in the northerly of these buildings, it being the long frame building, that gambling, betting, bookmaking and wagering on horse races during the time mentioned in the indictment were carried on. The evidence is just as conclusive that in the southerly building during the time laid in the indictment, poker, faro and roulette games were being played for money and other gambling games were there engaged in. There is evidence showing that the usual way of getting into the building to the north was by going into the front of the saloon kept by the defendant, passing out the rear thereof, and entering the building by the rear door thereof. Gambling games were carried on also in this building, at which money was won and lost. The evidence is that large crowds of men were often seen in and about this place, going in and coming out of the saloon of the de-

fendant, and out of these places. The mother of the defend-
ant testified that the defendant conducted the business of the
saloon and restaurant, which was licensed in his name, as an
inn and tavern, and which was known as the Hoffman House,
with which the frame building on the north is connected.

Reference is made to so much of the evidence to show that
the question who it was that kept and maintained this dis-
orderly place was one which must be taken by the jury to
determine.

At the close of the case defendant requested that the trial
court instruct the jury to acquit. Upon the refusal of the
court to so instruct, the defendant prayed an exception, which
was allowed and sealed, and error is assigned upon such
refusal.

This exception and assignment of error has no place in the
criminal practice in this state. Error cannot be assigned on
a trial of an indictment upon the refusal of the court to direct
an acquittal.

Besides, the evidence was amply sufficient, at this point, to
go to the jury to pass upon the question whether the defend-
ant had control of either of the buildings in which betting on
horse races and other forms of gambling had been carried on.

The defendant was called as a witness in his own behalf.
He was the only witness called for the defence. He denied
that he had anything to do with the buildings north or south
of his saloon or tavern and restaurant. He testified that his
mother owned the building to the north, and that it was and
had been under her control. He admitted that he had fre-
quently seen and had knowledge of crowds of people gathered
about the building.

His mother was recalled by the state, and in rebuttal testi-.
fied that she owned the building to the north, but exercised
no control whatever over that or the saloon and restaurant,
and that she had never given anyone permission to occupy or
had rented to anyone the building to the north for any pur-
pose, and that she had never received anything for its use and
had nothing to do with it, and that her son, the defendant,

took charge and control of the building for her. Her evidence was not denied by the defendant.

The evidence fully sustains the conviction unless it be that the case in some respect in point of law was improperly submitted to the jury.

It is hardly necessary to take up the assignments of error *ad seriatim.*

The trial court refused upon request to charge that the building to the south of the saloon was " owned and controlled entirely beyond the ownership and control of the defendant ; " that there was not " any evidence that the defendant had control of the building not owned by his mother, or that he was ever in that building ; " that " there is not any evidence in this case showing that the defendant had any control over the building to the south of his hotel ; " and further, that " the defendant's testimony that he did not have any control over the building [which building the request does not state], was never in it and had no ownership in it, must be taken as true by the jury, it not having been shown that he was ever in the building or did any act concerning its control." In this latter request is included the desire of the defendant to have the testimony of the defendant in this respect characterized as " uncontradicted."

It is sufficient to say that if the trial court had charged these propositions of fact it would have done violence to the evidence and the probative force and effect thereof; the trial court had no right to pass its opinion as conclusions of fact on these questions. They were questions for the jury under all the proof in the case.

Two other assignments of error have to deal with the admission of the evidence of the witness Tuttle. One is founded upon the objection to the admission of his evidence, and the other is upon the refusal to strike out the whole of it, after it had been given. The only question raised is whether it was admissible at the time it was given. The evidence of this witness describes the different buildings, inside and outside, the manner in which he gained access to them, and the

manner in which access could be gained to them, what he found on the inside, the character of betting going on therein, and the different games being played there at which money was won and lost and what the persons assembled there were doing, and that those assembled there, many of them, were engaged in betting and playing the gambling games, and what was said by those managing the betting and gaming, and those engaged in betting therein. The whole point of the objection to this evidence was that the defendant was not present at this time, nor was the evidence preceded by proof that the defendant was connected with the place. So far as the contention is concerned that he was not shown to be connected with what was going on, the facts and circumstances afterward in proof must be taken by the jury to say whether the defendant was implicated or not. The mere order of proof was not material, and this class of evidence is admissible, whether in the presence or absence of the defendant, for it was evidence of acts and words characterizing the acts, not implicating the defendant at all, but connected with and explanatory of the conduct of the inmates of the place. Whether done and said in a place or building over which he had control, is another question. It is not often in this class of cases that proof can be made that the illegal practices are carried on in the presence of the defendant or party responsible for such practices. He is generally absent, but that fact does not prevent proof of the acts and doings of those assembled in the place. The character of the place is one of the essential elements of proof without which no responsibility could be established. The acts and sayings of the persons in these buildings congregated were alike competent evidence to prove the character of the place. The acts of betting and gaming were admissible, and what was said at the time was a part of the act. The *res gestæ* included the words, and were such part of the acts and so connected with them, as to illustrate their character. The acts and words stand together, forming one transaction. 21 *Am. & Eng. Encycl. L.* 111. It is a common thing in cases of disorderly houses to prove the

misbehavior of the inmates, and then to supplement with proof as to the persons who control and permit such disorderly conduct. After such evidence is admitted it then becomes a question of fact for the jury to determine whether satisfactory evidence has been produced to show that the defendant keeps, maintains or controls, or has the power to control the place, or permits and suffers it to be so kept and maintained, having power to prevent it. *Brown* v. *State,* 20 *Vroom* 61.

Whether the acts are illegal and constitute a disorderly house is a question of law for the court ; the question of control or permission as affecting the guilt of the person charged is a question for the jury. The cases are so numerous authorizing proof of the conduct and language of those who resort to a place of this kind, in order to determine its character, that it is not deemed necessary to refer to them. 5 *Am. & Eng. Encycl. L.* 693, 702. Words in connection with and explanatory of acts are admissible. *Hunter* v. *State,* 11 *Vroom* 495.

There was no error in the admission of this evidence or the refusal to strike it out.

There is another class of assignments of errors based upon refusals upon requests to charge further than the court had already charged. These requests are " that the jury cannot convict unless it be shown that the defendant was in some way connected with or controlled the building charged to be a disorderly house," and " that the defendant could not be held liable for anything he could not have prevented, and that he could not prevent anything in the building that he did not have charge or control of," and " that the jury cannot convict the defendant unless he had control of the premises or participated in their management."

These requests had been fully covered in the charge. The trial court said to the jury that the place or places where these practices were carried on, if they found such practices were carried on, in order to convict the defendant, must be established to be under his control and supervision. The

jury were distinctly told as to any of these buildings in which it was alleged that these practices were carried on, that it must be found by them as established by the evidence before conviction could follow, that the defendant was in control and supervision of them; that "he kept or caused to be kept the same or rented the same to some person, knowing that the same should and was to be so kept," and that the state must satisfy the jury of the guilt of the defendant beyond a reasonable doubt, and that if, upon the whole case, there existed in their minds a reasonable doubt as to the guilt of the defendant, he was entitled to the benefit of that doubt, and the jury should then acquit him.

There does not seem to be any other assignment of error which needs consideration. The law to be applied by the jury to the evidence was favorably stated in behalf of the defendant by the court, and upon an examination none of the exceptions to the charge of the court appear to be sustainable.

The entire record of the proceedings of the trial has been returned into this court by the plaintiff in error with the writ of error, and we have examined it, and applying the principles laid down by the Court of Errors and Appeals in the case of *Kohl* v. *State*, 30 *Vroom* 445, it does not appear from such record that the plaintiff in error, on the trial below, suffered any manifest wrong or injury by the rejection of evidence, or in the charge of the trial court to the jury, or in the denial of any matter by the trial court, which was a matter of discretion, or upon the evidence adduced at the trial.

Judgment of the Hudson Quarter Sessions must be affirmed.