STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. EZRA SWEET, PLAINTIFF IN ERROR.

Argued February 21, 1911—Decided June 15, 1911.

1. Where illegal testimony was introduced by the state without objection, there is no right in the defendant to a reversal, although the entire record is brought up under section 136 of the act of 1898. *Pamph. L., p.* 915. Nor will the use of such testimony by the trial court in its charge to the jury confer such right upon the defendant, unless such use be specified as a cause for reversal.

2. Where a detective was a witness for the state to prove disorderly conduct in a place kept by the defendant, and on cross-examination he had testified that he was paid for his services, it was within the discretion of the trial judge to exclude a question as to how much he received. where the prosecutor stated that he had no objection to a question as to whether the witness received more in case of conviction than in case of acquittal, and no such question was asked.

3. On the trial of an indictment for keeping a disorderly house, the trial court, over an objection, permitted a witness to state a conversation with an inmate of the house in which such inmate stated that she and other inmates were hired to dance and sing, and if anyone cared to buy them a drink they could do so, and the house received what they would call a rake-off for every round of drinks that was paid for. *Held,* that this testimony was incompetent.

On error to Middlesex Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices REED and TRENCHARD.

For the defendant in error, *Theodore B. Booraem,* prosecutor of the pleas.

For the plaintiff in error, *Joseph E. Stricker* and *George S. Silzer.*

The opinion of the court was delivered by

REED, J. The defendant was convicted of keeping a disorderly house in the township of Perth Amboy. The disorder charged in the indictment was that "men and women of evil fame the defendant did cause to frequent his house there to be and remain drinking, tippling, fighting, cursing, swearing, quarrelling, whoring and otherwise misbehaving themselves." It was not charged that gaming was one of the elements of disorder.

One of the matters testified to by the state's witnesses was the habit of playing craps in defendant's house by those who frequented the place. This testimony was incompetent under the indictment. *State* v. *De Lorenzo,* 51 *Vroom* 500.

No objection was made to its admission, and so the presence of the evidence in the record is not a ground on which error can be assigned or specified, although the entire record is brought up under section 136 of the Criminal Procedure act. *Pamph. L.* 1898, *p.* 915. *State* v. *Hummer,* 44 *Vroom* 714.

It is true that use of this testimony was made by the trial judge in his charge, wherein he left to the jury the question whether gambling was habitually carried on in the house with

the knowledge of the defendant. There was no exception taken to the charge specifically upon this ground.

Although the plaintiff was not confined to his bill of exceptions and errors assigned therein, he was bound to serve upon the defendant in error a copy of the causes relied upon for reversal; and any matter not so specified need not be considered by the reviewing court. *State* v. *Lyons,* 41 *Vroom* 635.

There was no specification that pointed out as a ground for reversal that no testimony whatever respecting gambling was admissible under the indictment as framed.

Another ground for reversal insisted upon is that upon the cross-examination of certain witnesses, who were detectives employed by the state, certain questions respecting the remuneration for such services were overruled by the trial court. One of the witnesses was asked, "What do you get for coming here?" To this question there was an objection interposed. The counsel for the defendant insisted that he had a right to show the interest of the witness, and that he was undertaking to show that the witness's existence depended upon the number of convictions he secured. To this the prosecutor replied: "That is not the question; if the counsel confines the inquiry so as to ascertain whether he gets more in case of a conviction than in case of an acquittal, I have no objection." After this colloquy, the objection was sustained.

The detective witness was also asked, "Is this the only work you have done for the prosecutor's office in the county?" and upon objection this question was overruled.

The defendant undoubtedly had the right in the cross-examination to develop the interest of the witness in procuring a conviction, but the scope of the examination was within the reasonable discretion of the trial judge. When it appeared that the witness admitted that he was paid for his services as a detective, he had shown his position as a paid servant in the interests of the state. No witness was asked whether his pay depended upon the conviction of the person on trial, although the counsel for the state remarked that if the counsel for the defendant confined his inquiry to whether the witness got paid

more in case of conviction than in case of acquittal, he had no objection to this inquiry. In the absence of any questions specifically directed to this point, we think the question, how much he was paid, was one which was within the judicial discretion of the trial court to permit or to exclude. So we think there was no error in this ruling of the court.

The plaintiff in error insists that there was error in permitting a witness to testify to a conversation which he had with one of the inmates of defendant's house. The testimony shows that the place charged to be disorderly was termed a concert hall, in which girls sang songs with suggestive gestures. It shows that persons attending the concerts would be invited into an adjoining room where drinks could be ordered from or through these girls. One of the witnesses, who was invited into this side room, says that he sat in there with one of the girls and had three or four drinks. He says he asked her how the place was being run, and she answered that they were hired there to dance and sing, and that if anyone cared to buy them a drink they could do so, and the house received what they would call a "rake-off" for every round of drinks that was paid for by the party who paid for them. "They received a brass check, one of which I submitted to you in the investigation before the grand jury some time ago. I have that check with me now."

This testimony was admitted over an objection, and its admission was the subject of an exception.

It is insisted on the part of the defendant that this testimony was hearsay and so inadmissible.

It is entirely settled that language used by inmates of a house charged to be disorderly may be evidential respecting the character of the house. *Bindernagle* v. *State*, 31 *Vroom* 307, 313.

Such language, however, unless used in the hearing of the defendant, must be of itself disorderly, or must be used in connection with acts which, together with the language, exhibited disorderly conduct. Thus the language of one of the girls in the defendant's place soliciting men to make appointments for future meetings elsewhere, would be clearly admis-

sible as exhibiting the habit of the inmates of the place to make it a centre for assignments for future vicious purposes. The colloquy introduced in the present case is not within this rule; it did not characterize or explain any alleged disorderly act then doing, nor was the narration disorderly in itself. It was hearsay testimony that someone, inferentially he who controlled the place, hired the inmates for the purpose named.

For the reason that this testimony was improperly admitted, we think that there should be a reversal of the judgment.