144 So. 112

### McGEE v. STATE.

### 4 Div. 871.

Court of Appeals of Alabama.

May 10, 1932.

Rehearing Denied June 30, 1932.

Further Rehearing Denied Nov. 1, 1932.

Mulkey & Mulkey, of Geneva, for appellant.

Thos. E. Knight, Jr., Atty. Gen., for the State.

Brief did not reach the Reporter.

SAMFORD, J.

The defendant was indicted on a charge of murder in the second degree, and on his trial was convicted of manslaughter. After conviction defendant made a motion for new trial on the ground that the verdict was contrary to the great weight of the evidence. This motion was overruled, and it is here insisted that in this ruling the trial court erred.

██ The facts are without dispute that deceased was killed by defendant by shooting him four times with a pistol, and the excuse offered was that the defendant shot in self-defense. This placed upon the defendant the burden of introducing evidence sustaining this plea to such an extent as to raise in the minds of the jury a reasonable doubt of guilt. There was evidence tending to prove this, but there was also evidence from which the jury could conclude that there was no impending necessity to take the life of deceased, in the absence of which defendant could not sustain his plea. Under the well-known authority of Cobb v. Malone, 92 Ala. 630, 9 So. 738, we cannot hold that the trial court erred in overruling the motion.

██ On cross-examination of defendant, while he was being examined as a witness, the solicitor asked: "Didn't he then want more whiskey and didn't you tell him that he already owed you four dollars, out there in the barn?" This was relevant as a part of the res gestæ, as tending to prove who brought on the difficulty. The question being answered in the negative was also without prejudicial injury.

We find no error in the record, and the judgment is affirmed.

Affirmed.

## On Rehearing.

In his brief filed on application for rehearing counsel for appellant says: "I will be glad the court would point out the testimony in that case from which the jury could conclude that there was no impending necessity to take the life of the deceased." He proceeds to "assert that there was no such testimony."

In the first place, this court is now passing on the ruling of the trial judge overruling defendant's motion for a new trial. So, we first consider the fact that twelve jurors, selected by and with the consent of the defendant and his eminent counsel, having all the parties and witnesses before them and after full and able instruction from the court, must have found such evidence. Second, that the trial judge, having the benefit of having heard the entire evidence, seeing the witnesses, observing their manner and demeanor on the stand, together with what must have been the able, forceful, and persuasive arguments of counsel, still found such evidence and overruled the motion for new trial.

With all of the presumptions which we must indulge, in favor of the verdict of the jury and the judgment of the trial judge, we are called upon to place our finger on the specific evidence which influenced the jury and judge in their findings in the court below. Out of the great respect which we have for the appellant's counsel, this we proceed to do, being guided by the well-known and oft-cited rule declared in Cobb v. Malone, 92 Ala. 630, 9 So. 738.

The only person immediately present at the place of the difficulty examined as a witness by the state was a man by the name of Sidney Cotton who went to defendant's house in a car with deceased. From the transcript of his testimony this witness appears over cautious when asked questions which would bring out the facts as to who provoked the difficulty. When pressed on these points and on any points where he should have known, his answers were evasive and his excuse was he was drinking heavily and did not know, and when the shooting began he placed himself behind an automobile where he could not see. While all the witnesses present who testified for defendant could both see and hear what was going on, this state's witness, although present having presence of mind to get behind an automobile to avoid being shot, could not observe defendant's condition or anything he said. This witness did testify to the killing, that Mitchell brushed defendant with his hand striking about the hat, and that there were three or four shots fired, and that he saw no pistol on or about deceased. The evidence showed three pistol bullet holes in the body of deceased, two in front and one in the side.

Miss Bernice Ward, who saw the shooting, was "right across the street." She said: "I saw John McGee shoot J. D. Mitchell and he fell backwards. He fell back with his hands above his head. I could see nothing in his hands. I did not see him, Mitchell, with a pistol. If Mitchell shot I did not see or hear it." This witness further testified that after the shooting defendant and another man she did not know ran into the house and came back, in about a minute and a half. Defendant stopped at the corner of the house and the other man went to where Mitchell was lying, bent over him, and a gun fired from between them. This evidence was corroborated by the testimony of Thelma Scarbrough, who was with the witness Bernice Ward, and while this witness did not know the parties, she made it plain that the man who was shot had nothing in either hand at the time. She also made it plain that several shots were fired at first and that after the two men returned from the house and one of them bent down over Mitchell while he was lying on his back dead, another shot was fired there at the body which was louder than the others. Jim Peters testified, after identifying time and place: "I heard some shooting; about four or five shots, afterwards I heard a gun (evidently a pistol) shoot. I paid more attention to the last shot than I did to the others; it seemed like it was a little bit louder * * * there was a last gun shot after the others. * * * There was about a minute and a half difference in time between the first four or five shots and this other shot." This testimony was also corroborated by C. F. James. The testimony of the two women tended to show that Driver, the father-in-law of defendant and who testified that he was shot in the leg, while he was grappling with deceased trying to prevent deceased from shooting defendant, was not shot until after deceased had been killed and that it was done while. Driver was bending down over deceased and while deceased was lying there in the yard dead.

The testimony of Bernice Ward and Thelma Scarbrough was in direct and material conflict with testimony of defendant and his witness as to the physical facts of the shooting, and the testimony of the defendant and his witnesses on these points could not be believed unless the testimony of Misses Ward and Scarbrough was entirely discarded. There is no halfway ground. The testimony of these witnesses is true or it is false. If true, then the jury might have concluded that defendant shot at deceased four times, striking him three times, that deceased was unarmed, or at least had no arms in his hand, and coupled with the somewhat unsatisfactory testimony of Cotton that the only hostile demonstration made by deceased was with his bare hand. The jury may have concluded that the pistol found by the body of deceased

had not been drawn or fired until after defendant and his father-in-law went into the house and came back, that the story as told by defendant and Driver had been fabricated and the pistol planted, realizing that a plea of self-defense would be hard to sustain unless a pistol recently fired could be found near the body and identified as the pistol of the dead man. We do not.say, and it is not necessary for us to find, that the above are correct conclusions to be drawn from the testimony; but we do say they are legitimate inferences, when taken and considered with all the surrounding facts and circumstances, together with the character, station of the parties, their appearance and demeanor.

The law of self-defense is ancient, wise, and humane and courts should and do uphold it. But it is of easy fabrication, and when its proof lies entirely with the partisans, friends, and relatives of one who pleads it, the facts and evidence should be closely scanned and critically viewed less reproach fall upon the administration of our criminal law.

The opinion is extended, and the application is overruled.