56 So.2d 356

## DUNNAWAY v. STATE.
### 7 Div. 144.

Court of Appeals of Alabama.
June 29, 1951.

Rehearing Denied Aug. 2, 1951.

Wales W. Wallace, Jr., Columbiana, for appellant.

Si Garrett, Atty. Gen., and Thos. M. Galloway, Asst. Atty. Gen., for the State.

PRICE, Judge.

Appellant was indicted, tried and convicted of murder in the second degree, and was sentenced to twenty years imprisonment in the State penitentiary.

The evidence is without dispute or conflict that James Allen died shortly after a personal encounter with defendant and that the cause of his death was a wound in the side caused by a roofing knife. The coroner's testimony as to the wounds on the body of deceased is as follows:

"There were seven cuts in the body, all of them more or less on the left side. One cut started under the left arm here (indicating) and severed this muscle I believe (indicating), let me refresh my recollection just a minute, two and one half inches (indicating) severing this muscle; it was rather deep then it got shallow for a distance of about an inch and three-quar-

ters and cut deeper again for a distance of three and a half inches on the front and at that time it opened up between the ribs or opened up the thoracic cavity for a distance of probably three inches.

"There were six other cuts on the body all of them shallow, more or less, barely went through the skin. All of them located on the left side here (indicating), left side and on the front."

On cross examination the witness testified in his judgment death was caused by one wound. The other cuts being more or less superficial.

The killing occurred November 12, 1949 near midnight at a filling station or grocery store called Shady Grove in Shelby County.

Bill Dennis, the only eye witness except defendant, testified for the State, as follows:

"James got out of the car and said, 'I think I can take care of myself or anybody else,' and Charlie told him, 'James, I was kidding, I didn't mean any harm,' and James slapped Charlie and he reached his left hand in his pocket and Charlie told him not tô pull that knife out; 'if you do I will kill you' and they went together." "They went to fighting and fought about a minute and a half, something like that and they stopped and James staggered back up to the car he drove up in and stood there a second or two and fell down beside it." He also testified that when deceased slapped Charles he, defendant, backed up a normal step.

This witness testified on cross examination that Allen slapped or hit defendant twice before the defendant began cutting him. He also testified that deceased was coming on and hitting defendant each time defendant struck with the knife.

Defendant, testifying in his own behalf, stated he had been at the filling station about an hour and a half. Some unidentified person called to him to come outside and when he went out several people were gathered around the automobile in which deceased was sitting. That he heard deceased and another man cursing. Whereupon defendant said: "Jim, if you all get in a fight here they will call the law and have

you locked up." Deceased got out of the car and said he was big enough to take care of himself or anybody else. Defendant replied that he was joking and didn't mean any harm. Deceased then hit defendant with his right hand and reached his left hand in his left coat pocket. Whereupon he cut deceased with the knife, which he used in his work, and continued to cut him until he fell back. That deceased was hitting him each time he made a lick with the knife.

A knife, described as a medium sized pocket knife of the Scout type, was found unopened in deceased's right front pocket after his death.

There was testimony as to a vertical drop or wall from 3 to 5 feet high, between the filling station and garage, which defendant claimed was to his back, and some cars were parked in the vicinity.

Investigating officers testified to varying statements by defendant to the effect that he had not killed deceased, and that he later admitted he did kill him.

There was evidence that deceased had been drinking on this occasion and defendant testified he drank two bottles of beer early in the evening. Defendant introduced evidence to prove his good character for peace and quietude and that deceased was overbearing when drinking.

Deceased and defendant had known each other all their lives, and had been out together on many occasions, but had not seen each other for about a year. There is no evidence in the record disclosing previous bad feeling between the parties.

The theory of defendant's defense was that the act was done in self defense or as a result of passion suddenly aroused by the blow struck by deceased. The law applicable to the case was clearly and accurately stated in the oral charge of the court.

All of the questions involved were for the determination of the jury and, after a full and careful consideration of the evidence adduced on the trial, we are of the opinion it was sufficient to sustain the verdict and that the trial court should not be put in error for overruling defendant's

174

motion for a new trial, based on the ground that the verdict was contrary to the preponderance of the evidence. Freeman v. State, 30 Ala.App. 99, 1 So.2d 917, certiorari denied 241 Ala. 178, 1 So.2d 920; McGee v. State, 25 Ala.App. 232, 144 So. 112; Cobb v. Malone, 92 Ala. 630, 9 So. 738; Weaver v. State, 216 Ala. 557, 114 So. 67; Smith v. State, 23 Ala.App. 488, 128 So. 358; Peterson v. State, 32 Ala. App. 439, 27 So.2d 27; Stephens v. State, 250 Ala. 123, 33 So.2d 245; Patillo v. State, 245 Ala. 192, 16 So.2d 303.

■ Defendant having brought out on cross examination of State's witness Bierley, that while witness was in jail charged with stealing a State truck he was asked by the Sheriff as to statements made by defendant immediately after the killing, and told it would be better for him in his case if he would help convict the defendant, it was proper for the State to question the witness on redirect examination with respect to the new matter brought out by the defendant in opposition to the State's contention. Jones v. State, 22 Ala.App. 141, 113 So. 478; Watts v. State, 8 Ala.App. 115, 63 So. 15.

■ State's witness Franklin, after testifying "He (defendant) just came up to the car and asked me to carry him home and said I just killed a son of a bitch * * *," was asked by the Solicitor: "Q. When did he say he had just killed a son of a bitch and I love it?" The court sustained the defendant's objection to this question as leading, whereupon the Solicitor stated: "He said that in the office while ago." Counsel for defendant objected to the statement and moved its exclusion. The court promptly instructed the jury the remark of the Solicitor was highly improper and not to be considered by the jury as testimony in the case. The

rights of the defendant are not shown to have been so prejudiced by said remark as to render a fair trial a matter of grave doubt and it was not an abuse of the court's discretion to refuse to order a mistrial. Pruitt v. State, 22 Ala.App. 353, 115 So. 698; Windom v. State, 18 Ala.App. 430, 93 So. 79; Stephens v. State, 252 Ala. 183, 40 So.2d 90.

The request for the general affirmative charge was properly refused.

Charge No. 4 was fully covered by the court's charge and by the given charges.

There being no reversible error in the record the judgment of the trial court is affirmed.

Affirmed.

### On Rehearing.

Appellant's counsel requests that we review the ruling of the trial court in sustaining the State's objection to the following statement in the showing for defendant's absent witness, Frank Barnard:

"I had been trying to get Jimmy to go home but he would not do so."

The showing was to the effect that Frank Barnard and deceased were cousins. They had been in Birmingham together since morning and had been drinking. They had driven to the filling station together a few minutes before the difficulty occurred.

■ The action of the court in sustaining the objection was without error. The statement was an opinion and conclusion of the witness and invaded the province of the jury. The witness should detail the facts and circumstances and let the jury decide whether he was trying to get defendant to go home. Lambert v. State, 208 Ala. 42, 93 So. 708; Prince v. State, 215 Ala. 276, 110 So. 407; Stewart v. State, 27 Ala. App. 315, 172 So. 675.

Application denied.