159 So.2d 809

**Edward Nelson CREEL**

v.

**STATE.**

**8 Div. 909.**

Court of Appeals of Alabama.

Oct. 8, 1963.

Rehearing Denied Nov. 5, 1963.

Nabors & Torbert, Gadsden, for appellant.

Richmond M. Flowers, Atty. Gen., Bernard F. Sykes, Asst. Atty. Gen., and Roy E. Hicks, Legal Research Aide, Montgomery, for the State.

PRICE, Presiding Judge.

The appellant, Edward Nelson Creel, was found guilty under an indictment charging second degree burglary and grand larceny, His punishment was fixed at eighteen months in the penitentiary.

The state's evidence tends to show that the grocery store of J. C. Brown & Com-.

pany, 2400 Triana Boulevard, Huntsville, was burglarized on the night of June 27th, or in the early morning hours of June 28, 1961. Company employees reporting for work found a vent in the skylight torn out. In the office a door was ripped off one of the safes and an attempt had been made to pry open another safe. The store was filled with tear gas and papers were strewn about the office floor.

It was 18 feet from the skylight to the inside floor. A soft drink vending machine, six feet high, sat directly beneath the skylight. There were shoe marks on this machine.

Mr. William A. Brown, the Company President, testified there was missing from the safe about $600.00 in money, in various denominations. There were also missing a pen and pencil set valued at $15.00, a pair of silver cuff links of the value of $5.00 and a pair of gold cuff links worth $65.00.

On the morning of June 28th Mark Smith and Fred Thompson, Huntsville Police Officers, riding in a black and white police car, marked "City of Huntsville Police Department" on the side, a red light on the top and a siren on the left front fender, stopped at the intersection of 8th Avenue and 8th Street. Looking to the left they saw the defendant, Creel, and two other men standing near some trash barrels at the side of the Huntsville Warehouse, at the corner of 8th Street and 9th Avenue. The men stood for a few seconds at the trash cans, then walked North on 8th Street toward the officers for half a block, until they reached the alley that runs back toward Triana Boulevard, when they started running through the alley.

Officer Smith followed them into the alley and some forty minutes later found the defendant underneath a piece of plywood.

At this time the officers had not received report of the Brown Grocery Company burglary, but were in the area because of reports of another burglary.

Mr. Bruce, the Manager of the Huntsville Warehouse Company arrived at his office around 7:30. The warehouse is one block from Brown Grocery Company. Mr. Bruce's attention was drawn to a rope 18 or 20 feet long lying beside the trash barrels at the side of the warehouse, when he looked into the barrels he saw a sledge hammer and tire tools. Police Officers were called and they removed these articles from the barrel, together with a pair of coveralls and a bag containing 1312 pennies, 236 dimes, 454 nickels, 61 quarters, 24 half dollars, 91 one dollar bills, 47 fives, and 15 tens. There were also some checks in the bag.

In the coverall pockets the officers found a Parker pen and pencil set, a pair of cuff links, several packages of cigarettes and a plastic vial containing pills. In another trash can nearby the officers found two pairs of cloth gloves.

Mr. Young, a city detective, testified he had a conversation with defendant in jail, in which conversation defendant said his cigarettes had been taken from him when he was booked at the police station, and asked that they be returned to him. That afternoon witness returned to the jail and placed on a table in the room with defendant a billfold, watch, ring, comb, cigarettes and lighter and the plastic vial taken from the coveralls. He asked defendant to take the items belonging to him and defendant took the cigarettes and comb. The officer asked if there were any other objects on the table that belonged to him. Defendant picked up the vial and said, "This belongs to me." The officers asked if he was sure the vial was his, and he said he was sure that it was, that he had been carrying it for about five years, and pointed out certain cracks on the side of the vial. In a conversation about the defendant's being a truck driver, defendant said the vial contained "bennie pills." Defendant, being asked if he knew where the vial came from, said it had been removed from his pocket at the jail. Upon being told that the vial was found in the coveralls, defendant said, "I don't have anything else to say."

Mr. McVay, a state toxicologist, testified a microscopic comparison of the dust, dirt and other substance on the coveralls, and of the material found on the tire tools showed that it was similar to the asbestos insulation material from the safe firewall.

■ Officer Young testified the defendant's eyes were red when he first observed him at the jail about ten o'clock. He was asked, "What effect does tear gas have on your eyes?" The court sustained defendant's objection because the witness had not been qualified. The witness then testified he was a graduate of the FBI Academy; that he had received training in the use and effect of tear gas and had had actual experience with it; that tear gas produces tears and make the eyes red and irritated; that the defendant's eyes were red when he first saw him at ten a. m. On cross-examination the witness stated that when he was at the FBI school he was on the tear gas range for a week, that no live objects were tested for effect; that he did not breathe tear gas or see anyone else breathe it, but that his experience there consisted of firing weapons containing tear gas. The witness testified he had actual knowledge of the effects of tear gas on the eyes while serving in the Air Force in 1952; that during his basic training he ran through the tear gas room three times with others; that he had observed persons with eyes reddened due to loss of sleep and to hangovers, but in such cases it is the eyeball and not the eyelids which are inflamed.

■ The question as to whether a witness has by study, practice, experience or observation as to a particular subject, acquired knowledge beyond that of the ordinary witness, so as to qualify him to testify as an expert, is largely within the discretion of the trial judge, whose ruling thereon will not be disturbed on appeal unless a clear abuse of such discretion is shown. Alexander v. State, 37 Ala.App. 533, 71 So.2d 520; Willingham v. State, 261 Ala. 454, 74 So.2d 241; King v. State, 266 Ala. 232, 95 So.2d 816; Fiorella v. State, 41 Ala.App. 3,

142 So.2d 885. We find no abuse of discretion here.

The defendant did not testify. The only evidence offered in his behalf was the testimony of a character witness.

■ The solicitor argued to the jury, "when there is no defense, that they will hop on the state's case." Defense counsel moved for a mistrial "based on the fact that it could be a reference to the fact that the defendant didn't take the stand on his own behalf." The court overruled the motion.

We cannot agree that the defendant was entitled to a mistrial because of this remark.

In Welch v. State, 263 Ala. 57, 81 So.2d 901, the Supreme Court in reversing a decision of this court held that the solicitor's argument that "he had a good case and the defense had not offered any evidence," was not a comment on the defendant's failure to testify. There the defendant had not testified. We think the Welch case is decisive of the present question.

■ The tools found in the trash barrel near the crime have not been forwarded for our inspection, but we think a fair inference to be drawn from the evidence is that defendant had access to the tools with which the crime might have been committed, and that they were suited for use in gaining entry to the Brown Grocery Company and its safe in the manner in which entry was gained. The solicitor's statement to the jury that "those are tools that can be used for burglary or safe cracking" was objected to as "an unqualified conclusion of the Solicitor." We think the solicitor's remark was not improper. The statement was merely an expression of his personal opinion, based on matters of common knowledge. Champion v. State, 33 Ala.App. 398, 34 So. 2d 183; Ash v. State, 33 Ala.App. 456, 34 So.2d 700.

■ There was no error in denying defendant's motion for a mistrial on the

ground that the bag of money purportedly found in the trash can together with checks, and rent receipts in the bag, identified as having been in the safe on the night of the burglary, were exhibited to the jury by the solicitor, but were not formally offered in evidence. Kabase v. State, 31 Ala.App. 77, 12 So.2d 758; Taylor v. State, 249 Ala. 130, 30 So.2d 256; Davis v. State, 35 Ala.App. 144, 44 So.2d 275.

Charge numbered 9 was refused without error, Richardson v. State, 33 Ala.App. 40, 29 So.2d 883.

Charge numbered 13 is misleading. It is not the charge held good in Bowen v. State, 140 Ala. 65, 37 So. 233, and Holman v. State, 36 Ala.App. 474, 59 So.2d 620, cases cited and relied on by defendant as authority for its correctness.

Charge 23 was properly refused.

The evidence presented questions for the jury's determination and was sufficient to sustain the conviction. The defendant was not entitled to the general affirmative charge. The motion for a new trial was properly refused.

Affirmed.