319 So.2d 290

**James JACKSON**

**v.**

**STATE.**

**3 Div. 372.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1975.

---

Frank W. Riggs and Von G. Memory, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and Eric A. Bowen, Asst. Atty. Gen., for the State.

DeCARLO, Judge.

Burglary, first degree; ten years.

Eight-year-old Cassandra McLendon was one of six children living with her mother, Irma Jean McLendon. Cassandra shared a bed with her nine-year-old brother, Jimmy, and the other children slept in adjoining rooms.

On February 9, 1974, Cassandra wasn't feeling well, and her mother left the house to get some medicine. It was late and Cassandra, along with her brother James, was in bed watching television. They had fallen asleep and were awakened by the sound of breaking glass. Shortly, appellant entered the room, lifted Cassandra from the bed and carried her into the mother's bedroom.

He laid her on the bed, snatched her panties off and asked Cassandra to hold his private parts. After doing as she was told, appellant slapped Cassandra and then got on top of her.

Cassandra testified appellant placed his private parts in her, and she hollered. At that moment a car drove up, and he ran out the back. Subsequently, Irma McLendon came in, and Cassandra related what had happened. After the police arrived, the child was taken to the hospital.

Jimmy McLendon recalled that on the night in question he got under the bed when appellant appeared in the room. Although the light wasn't on in his bedroom, Jimmy could see by the light burning in the bathroom. He watched appellant carry Cassandra to their mother's room. His testimony surrounding the incident was substantially the same as Cassandra's, but he added that appellant placed a chair behind the front door before running out the back. Jimmy stated he saw appellant leave the house and get into a red car with a white top and two "arrows".

Irma McLendon testified she lived at 3309 Nesbitt Avenue in Montgomery, Alabama. On February 9, 1974, she was at home with her children but left between 12:00 and 12:30 A.M. to get some medicine for Cassandra. Two of the boys were already asleep, and the other children were in their rooms. The back and front doors were locked when she left with a friend,

Andrew Bulcher. They drove to Super Foods and returned in about 45 minutes. As she tried to enter the front door, she noticed a chair had been placed against it. After forcing her way into the house, she saw glass on the kitchen floor. She talked with Cassandra and then called the police. Upon their arrival, she gave them Cassandra's torn panties which she had found on the bedroom floor.

Mrs. McLendon stated she had met appellant in 1967, and he was the father of her five-year-old daughter. Her relationship with him was sporadic, and he only called when he had "wife problems". Two weeks before the incident with Cassandra she had told him not to come around anymore.

Detective H. C. Norton testified he and Detective Lawrence Rutland investigated the alleged burglary. On their arrival around 12:30 A.M., they noticed a chair positioned behind the front door. When the door was opened, it would strike the back of the chair. In the kitchen they saw a broken window and pieces of glass on the floor. Detective Norton noticed a redness just below Cassandra's left eye and after talking with her, suggested she be taken to the hospital for examination.

Detective Norton identified a statement taken from Cassandra McLendon. In the statement the child described what happened and identified James Jackson as her attacker.

Detective W. W. Strain testified that approximately two and a half weeks after the offense, he arrested appellant in a red car with a red and white top.

The toxicologist's report indicated the laboratory examinations of the vaginal smear and wash were negative. Examination of the panties revealed they were extensively torn with the crotch area separate. The presence of semen was not detected.

Appellant did not testify. Martha Jackson, Donnie Teganis and Doris Williams testified appellant was with them at a fish-fry on the night of February 8, 1974, and remained in their company until about 5:00 A.M. Doris Williams stated appellant left the party only once. She was with him, and they only went across the street.

I

Appellant complains that removal of a talesman upon State's challenge that she would not convict on circumstantial evidence was error.

In qualifying the jury, the court made this inquiry of the veniremen:

". . . Would any of you not convict on circumstantial evidence where it's strong enough? I think the only one of the group is Mrs. Reed.

"MR. THOMAS: The State moves to strike her for cause.

"THE COURT: All right. Strike her for cause.

"MR. RIGGS: Judge, we object to the State—

"THE COURT: All right. Object to it and take an exception. I have already struck her.

"MR. RIGGS: —Well, Your Honor, if I may state my grounds. This case isn't a circumstantial evidence case, so we do object to striking her on the ground that she—

"THE COURT: Well, I overrule your objections. She is struck."

■ A juror may be disqualified where he has expressed opposition to a conviction on circumstantial evidence. Under T. 30, § 57, Code of Alabama, 1940, Recompiled 1958, we find:

"On the trial for any offense which may be punished capitally, or by imprisonment in the penitentiary, it is a good cause of challenge by the state that the person. . . . thinks that a convic-

tion should not be had on circumstantial evidence; . . ."

Appellant argues the refusal to convict on circumstantial evidence, unless it is of the highest degree, will not disqualify a juror. *Ott v. State,* 160 Ala. 29, 49 So. 810.

In the case under consideration, Mrs. Reed answered she would not convict where the circumstantial evidence was strong enough. This negative response indicates not only a discrimination against a conviction on ordinary circumstantial evidence but prejudice against circumstantial evidence of any degree.

■ The court committed no error in sustaining the State's challenge for cause, notwithstanding the assurance of defense counsel that the case did not rest upon circumstantial evidence. *Collins v. State,* 217 Ala. 212, 115 So. 223.

## II

■ Appellant maintained that Cassandra's mother had telephoned him demanding money, and through this conversation he sought to impeach her testimony.

Defense counsel endeavored to authenticate this conversation by testimony of Jack Lumpkin, manager of Reinhardt Motors where appellant worked. Mr. Lumpkin testified out of the jury's presence that he answered an incoming call, and the person did not identify herself, but asked to speak to James Jackson. When appellant answered, Mr. Lumpkin heard the caller identify herself as Jean. Mr. Lumpkin did not recognize the voice. On questioning by the court he stated he had never knowingly received a call from that person and didn't know who was calling.

After considering these facts, the trial court sustained the State's objection, stating in substance that this witness could not testify to the authenticity of the conversation in question.

■ Although it is true that offers of proof should be allowed in order to afford appellate courts a knowledgable means of evaluating a contrary ruling by the trial court, *Flurry v. State,* 52 Ala.App. 64, 289 So.2d 632, we are also aware that evidence constituting the showing must be admissible and material. *Sellers v. State,* 7 Ala. App. 78, 61 So. 485.

In the present case the trial court was apprised of the intent of Mr. Lumpkin's testimony. The court was also aware that before Mr. Lumpkin could testify about the alleged conversation, he had to recognize the caller. This he could not do. Any further showing from this witness could not accomplish that fact. His testimony was inadmissible, and the trial court's action was proper.

## III

■ It is insisted that appellant's motion to exclude should have been granted. Counsel contends that possession or occupancy of the burglarized dwelling was not proved.

We do not agree.

The record reflects that upon direct examination, Irma McLendon stated she lived at 3309 Nesbitt Avenue, Montgomery, Alabama, and on the night in question she left the victim and her other children in the house with instructions not to open the door. Further she said the doors were locked and on her return, she found a broken window in the kitchen and glass on the floor.

Coupled with these facts we have the identification of appellant by Cassandra and her brother Jimmy. Also we have the girl's testimony that appellant placed his private parts in her.

Additionally, Irma McLendon testified that about two weeks before the offense she had severed her relations with the appellant. It was understood that appellant was not to return.

The evidence presented was more than sufficient for the trial court to allow the

case to go to the jury. *Young v. State,*
283 Ala. 676, 220 So.2d 843.

We have found no error in the record.

Affirmed.

TYSON, HARRIS and BOOKOUT, JJ.,
concur.

CATES, P. J., not sitting.