PER CURIAM.
The appellant was indicted by the grand jury of Colbert County for burglary in the first degree, was found guilty as charged, was sentenced to thirty years in the penitentiary, and appeals to this Court.
This appeal was submitted to this Court on briefs. The appellant was represented in the trial court by counsel of his own choice, and is here represented by the same counsel under court appointment.
The appellant complains in his brief that the trial court erred in denying his motion to suppress evidence of two witnesses who identified him. One witness identified the appellant at 1820 Shade Avenue in Florence, Alabama, and at Muscle Shoals Police Headquarters, and in the courtroom during his trial; the other witness identified the appellant at Muscle Shoals Police Headquarters, and in the courtroom at the trial. The appellant claims that the identifications were initially made under circumstances which were unduly suggestive, or conducted in a police-dominated atmosphere, were attended with suggestions and assurances by those conducting the investigation and the identifications that the right person was being detained, were generally carried out in an atmosphere calculated to give the witnesses no other choice than to identify the appellant, all of which were in violation of the law and against the appel *812 lant’s rights and were without notification to him of his rights against self-incrimination and his rights to have the presence of an attorney.
We have searched the record, and it appears that the alleged burglary was committed at 1405 Burrow Avenue, Muscle Shoals, Alabama, on the night of April 12, 1975 between 9:00 and 10:00 P.M.; that state witness Gamel, a cab driver, picked up two men at the Shop-Rite Market about three-fourths mile from the scene of the alleged burglary at about 10:30 P.M. on that night, and took them to 1820 Shade Avenue, in Florence, Alabama; that one of the men rode on the front seat of the taxi with the cab driver, and talked with him during the trip about houses. That the trip took about fifteen or twenty minutes’ time; that the fare was $4.00, and each passenger paid him $2.00. At the request of the law enforcement officers, the cab driver went back to the house at 1820 Shade Avenue in Florence between 2:00 and 4:00 A.M. on April 13, 1975, and went up on the porch and looked through a window of the house and identified the appellant as being the person who rode on the front seat with him from Shop-Rite Market at No. 8, 2nd Avenue in Muscle Shoals to 1820 Shade Avenue in Florence. He also identified a Mr. Johnson as being the other fare. It appears that he made only one trip from Muscle Shoals to Florence that night. That the officers did not tell him why they wanted him to make the identification, or suggest to him in any way the person in the room that he was to identify, other than to ask him if he would look and see if he could identify the person who rode with him that night. There were about six people in the room which included four men and two women. He had seen the two women before. The cab driver identified the appellant again that morning about 4:00 A.M. at the police headquarters in Muscle Shoals. At this time about six men walked through a hall, one at a time, and the cab driver was in a room where he could see them. No suggestions had been made to him as to which one to identify. The appellant together with a friend and several other people, two officers and two firemen, and Mr. Johnson were in the walk through, all voluntarily.
State witness Lou Aldridge, a clerk on duty at Shop-Rite Market in Muscle Shoals, testified that about 10:30 P.M. on the night of April 12, 1975 two men came in the store and asked if they could stay in the store out of the cold until the taxi came. She told them they could. She sold one a magazine, had conversation with appellant. It was cold, and neither man had on a coat. One asked her if the taxi had called. She told him “yes,” and that the taxi company said it was on the way. That she had a conversation with the appellant about the taxi company not trusting them. That at 3:30 A.M., April 13, 1975 she was called by Muscle Shoals law enforcement officers and asked if she would come down to see if she could identify the men who were in her store that night at about 10:30. She went to Muscle Shoals Police Headquarters, and at about 4:00 o’clock, A.M. saw several persons walk through a hall. No suggestion was made to her by any person as to which one was suspected. She recognized, and identified, the appellant as soon as she saw him pass by in the hall. She also made a positive in-court identification of appellant at the trial.
At the time the appellant was identified by the cab driver at 1820 Shade Avenue in Florence, and at the police headquarters in Muscle Shoals, and by the clerk of Shop-Rite Market, at police headquarters, he was not under arrest for the burglary. He appeared voluntarily. No adversary judicial proceedings had been initiated against him for the burglary, and he was not represented by counsel.
We hold that the appellant was not entitled to have counsel present when he was identified at 1820 Shade Avenue in Florence, or at police headquarters in Muscle Shoals. Appellant insists that the manner in which the appellant was identified by the taxi driver and the store clerk was unfair and so suggestive as to taint the in-court identifications by the witnesses.
The trial court heard all the evidence given on the motion to suppress, and *813 on the trial before it, with reference to the identification of appellant by the witnesses, and concluded that the motion to suppress should be overruled and the identifications admitted in evidence. Under the facts we hold that the trial court’s ruling was correct. When viewed in light of all the surrounding circumstances, the in-court identification of the appellant was in no way tainted by the manner in which the appellant was identified out of court. Matthews v. State, Ala.Cr.App., 333 So.2d 189 (1976); Doss v. State, Ala.Cr.App., 333 So.2d 173 (1976); Wright v. State, Ala.Cr.App., 333 So.2d 218 (1976); Jackson v. State, 56 Ala. App. 276, 321 So.2d 243.
Appellant complains that the trial court erred to his prejudice by refusing to allow him to make a showing when the court sustained state’s objection to a question propounded by appellant, on cross-examination, to state’s witness, Mr. Ridgeway. We find in the record the following:
“Q. Mr. Ridgeway, have you ever attended any seminars or schools conducted by the State or by Law Enforcement Officials concerning the handling of real evidence?
A. Yes, sir. The Police Academy.
Q. What is the cardinal rule about handling real evidence?
MR. PATTON: I want to object to it if it please the Court, it’s irrelevant and immaterial.
BY THE COURT: I sustain.
MR. SELF: Your Honor, I will make an offer of proof if I have to, I think this will be relevant as we go along.
BY THE COURT: The objection is sustained.
MR. SELF: Well, I’d like to make an offer or proof then.
BY THE COURT: Approach the bench.
(At this time counsel for the state and the defendant approached the bench)”
Nothing more appears in the record on the subject.
The burden is on the appellant to have the record presented to this Court. For us to review a ruling of a trial court for refusing to allow a showing to be made, the record before us must show what the expected answer of the witness was, and that it was material, or that the trial court refused to allow the appellant to make a showing. The showing could be made in the presence or absence of the jury. Dockery, alias v. State, 269 Ala. 564, 114 So.2d 394; Harvey v. State Department Of Public Safety, 56 Ala.App. 660, 352 So.2d 170; Edwards v. State, 274 Ala. 569, 150 So.2d 710; Jackson v. State, 56 Ala.App. 94, 319 So.2d 290.
We hold that the record before us does not show what the expected answer was, and that it was material, or that the trial court refused to allow the appellant to make a showing.
Appellant contends that his conviction should be set aside upon the grounds that the trial court erred in sustaining the state’s objection to a question propounded by him to his witness, Officer Aday. Officer Aday was called as a witness by appellant, and "testified on direct examination that he had been a law enforcement officer for five years; that he did not own a dog, but that his partner, Officer A1 Carter, owned a police dog that had been specially trained to pick up the scent of human beings; that it was a valuable dog to police work. On cross-examination the witness stated that he did not know what scent the dog picked up on the night of the burglary, that it could have been anybody’s. On redirect examination by appellant’s counsel the following occurred:
“RE-DIRECT EXAMINATION BY MR. SELF:
Q. Mr. Aday, in your opinion, based upon your experience with these type dogs, would you have an opinion as to whether or not the scent that was picked up was the scent that the dog had gotten from whatever it was that the Muscle Shoals Police provided you with?
MR. PATTON: I want to object to it unless this witness is qualified as an expert, I do not believe—
*814 BY THE COURT: Sustained.”
We have searched the record for evidence showing how much knowledge, experience, or training, the witness had in the subject matter inquired about, and find none. As to whether a witness is qualified to testify as to his opinion is a matter for the trial court, in its discretion, to determine. Luckie, alias v. State, 55 Ala.App. 642, 318 So.2d 337, certiorari denied, 294 Ala. 764, 318 So.2d 341; Creel v. State, 42 Ala.App. 225, 159 So.2d 809, certiorari denied, 276 Ala. 702, 159 So.2d 812; Letson v. State, 215 Ala. 229, 110 So. 21.
We hold that the trial court did not abuse its discretion in sustaining the foregoing objection.
Appellant complains further that the court erred in allowing the state to offer in evidence, over appellant’s objection, the reason for his separation from the U. S. Marine Corps. Appellant called his mother as a witness in his behalf, and she testified that prior to April, 1975 she saw her son every two or three months; that his hair was bleached; that his hair was short because he was in the Marines. This evidence was offered for the purpose of contradicting the evidence of a State Toxicologist who had testified earlier for the state, and had given his opinion that appellant’s hair had not been bleached, and was similar to hairs found on a mask at the scene of the burglary.
On cross-examination appellant’s mother testified that appellant had enlisted in the U. S. Marines in July of 1972, and came out of the service in December, 1974. Over the objections of the appellant she was further allowed to testify that appellant was separated from the Marine Corps as being unsuitable, or unfit. This occurred shortly before the trial court recessed at 11:45 A.M. until 1:00 o’clock, P.M. for lunch. When the court resumed at 1:00 P.M., the following occurred:
“BY THE COURT: Court will come to order. Let the record show that the jury is in the box and the defendant is present in open court with his attorneys. Ladies and gentlemen, at this time I want to give you some instructions and I want you to listen to me and please listen to what I am saying. I, as the Judge, have made a mistake, I have admitted, allowed to be given to you evidence which I should not have done, and the only way I can correct my error is by instructing you to disregard that testimony and I do, at this time, request and instruct you as in strong a language as I know how, to all of you, to please disregard any testimony that has been offered in the matter of the separation of the Defendant from the service. I further instruct you to disregard any testimony that has been given to you concerning the Defendant being in any place when he was not on leave from the service. What I am asking you to do is, in essence, to when you deliberate this case, I want you to erase those facts from you mind and not to consider them in deliberation and in making up your mind. I ask you to do that in fairness to the Defendant and out of your obligation as jurors. Thank you. Mr. Self, do you have any further witnesses to call?”
Collier, C. J., of the Supreme Court of the State of Alabama, in the case of State v. Givens, 5 Ala. 747, at page 755 stated.
“But the error in the admission of this evidence, we think was cured by instructing the jury, that it was illegal and should be disregarded by them. .
The withdrawal of improper testimony, is not to be regarded as the privilege of the party merely; it is not only a right but the duty of the court, upon becoming convinced, pending the trial, that it has sanctioned the admission of illegal evidence, so to inform the jury, and direct them to discard it. A defendant can never be prejudiced by such a course, as it is calculated to expedite justice, and if perchance, the improper evidence has exerted an undue influence on the minds of the jury, the court should accord to the defendant another trial.”
And this Court, speaking through Sanford, J., in the case of Huckabaa v. State, 19 Ala.App. 11, 95 So. 587 stated.
*815 “When the court during the trial of a cause commits error in admitting testimony, and afterwards excludes it, and clearly and emphatically instructs the jury to disregard such testimony, the error is cured, unless the error has so prejudiced the jury as to be impossible of eradication.”
State v. Givens, supra; Huckabaa v. State, supra; Coe v. State, 53 Ala.App. 457, 301 So.2d 223; Lumpkin v. State, 19 Ala.App. 272, 97 So. 171; Reaves v. State, 33 Ala.App. 296, 33 So.2d 376; Baker v. State, 43 Ala.App. 550, 195 So.2d 815. There is no set rule by which the prejudicial character of improperly admitted evidence can be ascertained in all cases. Much depends on the issues, how it arose, and all the circumstances surrounding each particular case. Holt v. State, 26 Ala.App. 223, 157 So. 449; Ayers v. State, 48 Ala.App. 743, 267 So.2d 533; Cooper v. State, 42 Ala.App. 170, 157 So.2d 125.
We have reviewed the entire record, and hold that under the facts in this case the trial court, by excluding the inadmissible evidence, and clearly and emphatically instructing the jury to disregard such evidence, cured the error.
We have carefully reviewed the entire record, and find sufficient evidence to sustain the jury’s verdict finding the appellant guilty as charged.
There being no other rulings of the trial court complained of in appellant’s brief, we have examined carefully the entire record, and find from such examination that there is no error in the record prejudicial to the appellant.
The foregoing opinion was prepared by the Honorable Joseph J. Mullins, a retired Circuit Judge, serving as a Judge of this Court under the provisions of Section 6.10 of the new Judicial Article (Constitutional Amendment No. 328, Act # 1051, 1973); his opinion is hereby adopted as that of the Court.
The judgment below is hereby affirmed.
AFFIRMED.
All the Judges concur.